**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

| | |
|---|---|
| ANDREW GIANCOLA, RAYMOND T. SCOTT, and PATRICIA SMITH, Individually and On Behalf of All Others Similarly Situated, | Case No.: 8:17-cv-02427-T-33AEP |
| Plaintiffs, | |
| v. | |
| LINCARE HOLDINGS INC., | |
| Defendant. | |

**PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL**
**OF PROPOSED CLASS ACTION SETTLEMENT,**
**AND INCORPORATED MEMORANDUM OF LAW**

# TABLE OF CONTENTS

Page(s)

I.      INTRODUCTION ................................................................................ - 1 -

II.     SUMMARY OF THE LITIGATION ................................................... - 3 -

        A.    The Phishing Attack .............................................................. - 3 -

        B.    The Litigation ........................................................................ - 3 -

        C.    Discovery ............................................................................... - 5 -

        D.    Settlement Negotiations ........................................................ - 5 -

III.    TERMS OF THE PROPOSED SETTLEMENT ................................. - 6 -

        A.    The Settlement Class .............................................................. - 7 -

        B.    The Settlement Benefits ......................................................... - 7 -

              1.    The Settlement Fund .................................................... - 7 -

              2.    Enhanced Credit and Identity Monitoring Protection Services
                    Through TransUnion .................................................... - 8 -

              3.    Enhanced Data Security Measures ............................... - 9 -

        C.    Proposed Settlement Notice Plan ........................................... - 9 -

        D.    Service Awards ...................................................................... - 11 -

        E.    Attorneys' Fees and Expenses .............................................. - 11 -

        F.    Release ................................................................................... - 11 -

IV.     THE COURT SHOULD GRANT PRELIMINARY APPROVAL .............. - 12 -

        A.    Applicable Legal Standards .................................................. - 12 -

        B.    The Proposed Settlement Falls Well Within the Range of Reasonableness ..... - 13 -

V.      CERTIFICATION OF THE SETTLEMENT CLASS FOR SETTLEMENT
        PURPOSES IS APPROPRIATE ......................................................... - 17 -

        A.    The Settlement Class Satisfies the Requirements of Rule 23(a) ...................... - 17 -

ii

1.     Numerosity..........................................................................................- 18 -

2.     Commonality......................................................................................- 18 -

3.     Typicality ...........................................................................................- 19 -

4.     Adequacy of Representation ..............................................................- 20 -

B.     The Settlement Class Satisfies the Requirements of Rule 23(b)(3)..................- 20 -

1.     Predominance......................................................................................- 21 -

2.     Superiority...........................................................................................- 21 -

C.     The Court Should Appoint Settlement Class Counsel and Liaison Counsel ....- 22 -

VI.     NOTICE TO THE SETTLEMENT CLASS SHOULD BE APPROVED ..................- 23 -

VII.     THE COURT SHOULD ADOPT THE DEADLINES SET FORTH IN THE
PRELIMINARY APPROVAL ORDER.......................................................................- 24 -

VIII.     CONCLUSION...............................................................................................- 25 -

## **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Agan v. Katzman & Korr, P.A.*,
  222 F.R.D. 692 (S.D. Fla. 2004) ...................................................................... 22

*Amchem Prods. v. Windsor*,
  521 U.S. 591 (1997) ............................................................................... 17, 21

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*,
  568 U.S. 455 (2013) ...................................................................................... 17

*Ault v. Walt Disney World Co.*,
  692 F.3d 1212 (11th Cir. 2012) .................................................................... 19

*Burrows v. Purchasing Power, LLC*,
  No. 1:12-cv-22800, 2013 U.S. Dist. LEXIS 189397 (S.D. Fla. Oct. 4, 2013) ...................... 17

*Bush v. Calloway Consol. Grp. River City, Inc.*,
  No. 3:10-cv-841-J-37MCR, 2012 U.S. Dist. LEXIS 40450 (M.D. Fla. Mar. 26, 2012). ............................................................................................ 19

*Castillo v. Seagate Tech. LLC*,
  No. 3:16-cv-1958, 2017 U.S. Dist. LEXIS 178852 (N.D. Cal. Oct. 19, 2017) ..................... 17

*Coles v. Stateserv Med. of Fla., LLC*,
  No. 8:17-cv-829-T-17-AEP, 2018 U.S. Dist. LEXIS 39393 (M.D. Fla. Mar. 5, 2018) ................................................................................................ 18

*Columbus Drywall & Insulation, Inc. v. Masco Corp.*,
  258 F.R.D. 545 (N.D. Ga. 2007) .................................................................... 20

*Cooper v. Southern Co.*,
  390 F.3d 695 (11th Cir. 2004) ...................................................................... 19

*Diakos v. HSS Sys., LLC*,
  137 F. Supp. 3d 1300 (S.D. Fla. 2015) ........................................................... 17

*Figueroa v. Sharper Image Corp.*,
  517 F. Supp. 2d 1292 (S.D. Fla. 2007) ...................................................... 17, 18

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011, (9th Cir. 1998) ...................................................................... 21

*Hapka v. Carecentrix, Inc.*,
  No. 2:16-cv-2372, 2018 U.S. Dist. LEXIS 68186 (D. Kan. Feb. 15, 2018) ......................... 15

*Hines v. Widnall,*
    334 F.3d 1253 (11th Cir. 2003) ...................................................................... 19, 20

*In re Checking Account Overdraft Litig.,*
    275 F.R.D. 654 (S.D. Fla. 2011) ........................................................................ 13

*In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.,*
    No. 3:08-md-1998, 2009 U.S. Dist. LEXIS 119870 (W.D. Ky. Dec. 22, 2009) .. 14, 17, 19, 21

*In re Domestic Air Transp. Antitrust Litig.,*
    141 F.R.D. 534 (N.D. Ga. 1992) ........................................................................ 24

*In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.,*
    293 F.R.D. 21 (D. Me. 2013) ............................................................................. 15

*In re Heartland Payment Sys., Inc. Customer Data Sec Breach Litig.,*
    851 F. Supp. 2d 1040, 1051-60 (S.D. Tex. 2012) ...................................... 14, 17, 21

*In re Motorsports Merch. Antitrust Litig.,*
    112 F. Supp. 2d 1329 (N.D. Ga. 2000) ............................................................. 13

*In re Target Corp. Customer Data Sec. Breach Litig.,*
    309 F.R.D. 482 (D. Minn. Sep. 15, 2015) ..................................................... 14, 17

*In re Taylor Bean & Whitaker Mortg. Corp.,*
    No. 3:09-bk-7047-JAF, 2010 Bankr. LEXIS 3306 (Bankr. M.D. Fla. Sep. 27,
    2010) ............................................................................................................... 23

*Kilgo v. Bowman Transp., Inc.,*
    789 F.2d 859 (11th Cir. 1986) ........................................................................... 18

*Leidel v. Project Inv'rs, Inc.,*
    No. 9:16-cv-80060-KAM, 2016 U.S. Dist. LEXIS 150009
    (S.D. Fla. Oct. 26, 2016) .................................................................................. 13

*Leszczynski v. Allianz Ins.,*
    176 F.R.D. 659 (S.D. Fla. 1997) ....................................................................... 18

*Lipuma v. Am. Express Co.,*
    406 F. Supp. 2d 1298 (S.D. Fla. 2005) .............................................................. 16

*Nolan v. Integrated Real Estate Processing, LP,*
    No. 3:08-cv-642-J-34HTS; 2009 U.S. Dist. LEXIS 136890
    (M.D. Fla. Sep. 9, 2009) ................................................................................... 13

*Prindle v. Carrington Mortg. Servs., LLC*, No. 3:13-cv-1349-J-34PDB, 2016 U.S.
    Dist. LEXIS 112881 (M.D. Fla. Aug. 24, 2016) ............................................................ 19

*Ressler v. Jacobson*,
    822 F. Supp. 1551 (M.D. Fla. 1992) ............................................................ 13, 16

*Saccoccio v. JP Morgan Chase Bank, N.A.*,
    297 F.R.D. 683 (S.D. Fla. 2014) ............................................................ 14

*Silva-Arriaga v. Tex. Express, Inc.*,
    222 F.R.D. 684 (M.D. Fla. 2004) ............................................................ 18

*Smith v. Triad of Ala., LLC*,
    No. 1:14-cv-324, 2017 U.S. Dist. LEXIS 38574 (M.D. Ala. Mar. 17, 2017) ...................... 17

*Terrill v. Electrolux Home Prods.*,
    295 F.R.D. 671 (S.D. Ga. 2013) ............................................................ 21, 22

*Thorpe v. Walter Inv. Mgmt., Corp.*,
    No. 1:14-cv-20880, 2016 U.S. Dist. LEXIS 33637 (S.D. Fla. Mar. 16, 2016) ...................... 18

**STATUTES**

Fed. R. Civ P 23(e) ............................................................ 2, 17

Fed. R. Civ. P. 23(a) ............................................................ 2, 17, 20

Fed. R. Civ. P. 23(a)(1) ............................................................ 18

Fed. R. Civ. P. 23(a)(4) ............................................................ 20

Fed. R. Civ. P. 23(b) ............................................................ 21

Fed. R. Civ. P. 23(b)(3) ............................................................ 2, 21

Fed. R. Civ. P. 23(c)(1)(B) ............................................................ 22

Fed. R. Civ. P. 23(c)(2)(B) ............................................................ 23, 24

Fed. R. Civ. P. 23(e)(2) ............................................................ 12

Fed. R. Civ. P. 23(g)(1)(A) ............................................................ 22

**OTHER AUTHORITIES**

*In re Anthem, Inc. Data Breach Litig.*, No. 5:15-md-2617 (N.D. Cal) (Dkt. Nos. 869-
    5, 869-8) ............................................................ 14

*In re The Home Depot, Inc., Customer Data Sec. Breach Litig.*, No. 1:14-md-2583
(N.D. Ga.) (Dkt. Nos. 181-2, 226-1)................................................................. 14

Newberg on Class Actions §13:10 (5th ed.)…………………………………………………..12

## I.    __INTRODUCTION__

By and through their undersigned counsel, Plaintiffs Andrew Giancola, Raymond T. Scott, and Patricia Smith (collectively, "Plaintiffs") respectfully submit this motion and incorporated memorandum of law (the "Motion"), seeking preliminary approval of the proposed class action settlement[1] reached with Defendant Lincare Holdings Inc. ("Defendant" or "Lincare," and together with Plaintiffs, the "Parties"). Following months of intense, arm's-length negotiation between the Parties' experienced counsel, which include a 15-hour mediation session under the guidance of a well-respected and experienced mediator, the Parties have reached a proposed Settlement that, if approved by the Court, will fully resolve Plaintiffs' claims, on a class-wide basis, against Lincare.

The proposed Settlement represents an excellent result for the Settlement Class Members, particularly considering the significant risks, costs, and uncertainty that the Parties would otherwise face in ongoing litigation. Indeed, the Settlement will provide substantial and meaningful benefits to the Settlement Class, as follows:

> __Economic Relief from the Settlement Fund:__  Lincare will establish a cash settlement fund totaling $875,000 to compensate Settlement Class Members for losses sustained in connection with the Phishing Attack (described below), including $550,000 for various types of Out-of-Pocket Losses (up to $1,000 per Settlement Class Member), and $325,000 for certain Eligible Incidents of identity theft or fraud ($500 per incident, for up to two Eligible Incidents per Settlement Class Member).

> __Enhanced Credit Monitoring Services:__  Lincare will separately fund two additional years of Credit and Identity Monitoring and Protection for each Settlement Class Member through TransUnion's premier "MyTrueIdentity" package, including $1,000,000 of deductible-free identity theft insurance; comprehensive identity monitoring; access to an identity restoration program; access to credit, identity, and insurance specialists; comprehensive 3-bureau credit monitoring and alerts; access to TransUnion credit lock; and online credit dispute access.

> __Enhanced Data Security Measures:__  Lincare has implemented, and/or has agreed to

---

[1]  The settlement is memorialized in the Settlement Agreement and Release (the "Settlement," "Agreement," or "Agmt."), which along with its exhibits, is being filed concurrently herewith. Unless otherwise defined herein, all capitalized terms in this Motion have the meanings ascribed to them in the Agreement.

implement, and agrees to maintain certain Enhanced Data Security Measures to protect the Personally Identifiable Information ("PII") of its employees and former employees.

**Additional Benefits**:  Separate from and in addition to all other consideration and relief provided and offered by Lincare as part of the Settlement, Lincare will pay the costs of the Settlement Administrator and implementation of the Notice Plan, and Service Awards to Settlement Class Representatives, and the Fee and Expense Award to Plaintiffs' Counsel.

In light of the considerable benefits achieved on behalf of the Settlement Class, the proposed Settlement is plainly within the range of what is fair, reasonable, and adequate, and as such, merits preliminary approval under the governing standards of this Circuit.  Further, as discussed herein, the Settlement Class satisfies the requirements of Federal Rule of Civil Procedure 23(a) and (b)(3) and should be provisionally certified for purposes of settlement.

In addition, the Parties have agreed to the form and manner of notice to be issued to Class Members, apprising them of the Settlement and their rights and options thereunder.  Both the form and manner of notice are consistent with notice programs approved in similar class actions and satisfy Federal Rule of Civil Procedure 23(e) and all other due process requirements.  The proposed Notice Program set forth in the Settlement should therefore be approved.

For the reasons set forth herein, Plaintiffs respectfully request the Court enter an Order: (1) granting preliminary approval of the Settlement; (2) approving the form and manner described herein for giving Notice of the proposed Settlement to the Class, and authorizing Notice to the Settlement Class in accordance therewith; (3) approving the procedures in the Settlement for Settlement Class Members to exclude themselves from the Settlement Class or object to the Settlement; (4) setting a hearing date for the Final Approval Hearing, and a schedule for deadlines pertinent thereto; (5) granting preliminary certification of the Class for settlement purposes; (6) appointing the named Plaintiffs as Settlement Class Representatives; and (7) appointing Plaintiffs' Counsel Johnson Fistel, LLP as Class Counsel, and Tragos, Sartes & Tragos, PLLC as Liaison Counsel.  Defendant does not oppose this Motion.

## II.     SUMMARY OF THE LITIGATION

### A.     The Phishing Attack

Lincare is one of the largest providers of in-home oxygen, respiratory and chronic therapy services in the country.  (*See* First Amended Class Action Complaint, Dkt. No. 26 (the "Amended Complaint"), at ¶¶2, 44)  Lincare provides services to customers in 48 states in the United States and Canada, through more than 14,000 employees operating in over 1,000 locations.  (*Id.*)

On February 3, 2017, a cyber-criminal posing as a high-level Lincare executive emailed a Lincare Human Resources employee and requested W-2 information for all Lincare employees. (*See* Agmt. at §I.A.)  Believing the email to have emanated from this company executive, the Human Resources employee responded with "reply to" emails and attached unencrypted W-2 data—including the names, addresses, social security numbers, earnings information, and other highly sensitive information—for a certain number of current and former employees of Lincare and its affiliates (the "Phishing Attack").  (*Id.* at §I.B.)  On or about February 10, 2017, Lincare sent notice of the Phishing Attack to all impacted current and former Lincare employees notifying them that their PII may have been compromised as a result of the Phishing Attack.  (*Id.* at §I.C.) Lincare sent additional notices to impacted employees after the February 10, 2017 notice, and made available to all impacted employees two years of complimentary credit monitoring, remediation services, and identity theft insurance through InfoArmor, Inc. ("InfoArmor").  (*Id.*) Plaintiffs in this Litigation were all former employees of Lincare who were impacted by the Phishing Attack and received notices thereof from Lincare.  (*See* Am. Compl. at ¶¶14-16)

### B.     The Litigation

Before commencing the Litigation, Plaintiffs' Counsel extensively researched the facts and law surrounding the Phishing Attack and Plaintiffs' claims, including, *inter alia*: investigating Lincare's response to the Phishing Attack, and Lincare's data security practices; reviewing data

security industry practices; researching other data breach litigation nationwide; and analyzing the law of several states and jurisdictions.  Declaration of Michael I. Fistel, Jr. ("Fistel Dec.") at ¶3.

On October 16, 2017, Plaintiffs initiated this Litigation, filing a detailed 55-page Class Action Complaint (the "Complaint"), asserting claims against Lincare for negligence, breach of fiduciary duty, breach of implied contract, and violation of Florida's Deceptive and Unfair Trade Practices Act.  (Dkt. No. 1)  The Complaint asserted claims on behalf of Plaintiffs and a class consisting of "[a]ll current and former employees of Lincare who, during the period beginning on or about February 10, 2017 and continuing through the present, had their PII, including names, addresses, social security numbers, and/or W-2 information, wrongfully and voluntarily disseminated by Lincare to a third party or parties." (*Id.* at ¶106)  The Complaint made detailed factual allegations concerning Lincare's data security practices, the Phishing Attack, Lincare's post-Phishing Attack conduct, and the experiences of each Plaintiff.  (*See generally id.*)

On December 11, 2017, Lincare moved to dismiss Plaintiffs' Complaint in its entirety, arguing lack of Article III standing and failure to state any claim for relief, as well as to strike certain allegations of the Complaint.  (Dkt. No. 25)  Subsequently, on December 29, 2017, Plaintiffs filed the operative Amended Complaint (Dkt. No. 26), which effectively mooted Defendant's dismissal motion for the time being.  (Dkt. No. 27)

Before Lincare responded to the Amended Complaint, the Court stayed the Litigation, at the Parties' request, so that the Parties could participate in mediation.  (Dkt. Nos. 30, 31) Following mediation, on February 20, 2018, the Parties reached an agreement-in-principal to resolve the Litigation.  While the Parties were negotiating the terms embodied in the Agreement, the stay of the case expired, and the Litigation returned to active status on March 21, 2018.  (Dkt. Nos. 33, 34)  On April 11, 2018, Lincare moved to dismiss the Amended Complaint in its entirety

(Dkt. No. 36), Plaintiffs' response to which was due May 9, 2018 (Dkt. Nos. 29, 33, 34), and a hearing was set thereupon for May 14, 2018 (Dkt. No. 37).  On May 1, 2018, following the Parties' notification to the Court that a settlement had been reached, the Court entered an order denying Defendant's dismissal motion as moot, setting a deadline of May 14, 2018 for the Parties to file a motion for preliminary approval of settlement, and administratively closing the case. (Dkt. No. 38)

### C.    Discovery

Pursuant to Local Rule 3.5(c) and the Court's November 3, 2017 directive (Dkt No. 15), the Parties conferred on November 15, 2017, to discuss case management.  The Parties then negotiated and filed a proposed case management report on November 20, 2017.  (Dkt. No. 21) On November 29, 2017, the Parties participated in a telephone conference with the Court to discuss case management and scheduling.  (Dkt. No. 22)  The Court then entered a Case Management and Scheduling Order on December 5, 2017, setting deadlines for, *inter alia*, class certification discovery and Plaintiffs' anticipated motion for class certification.  (Dkt. No. 24)

The Parties promptly commenced discovery to investigate the facts and law underlying the Litigation.  Plaintiffs served interrogatories and two separate document requests on Lincare, to which Lincare answered with written objections and responses.  Plaintiffs also served on Lincare a notice of Rule 30(b)(6) deposition.  (Fistel Dec. at ¶4)  Lincare also served interrogatories and document requests on all three Plaintiffs, to which Plaintiffs answered with written objections, responses, and production of documents.  (*Id.*)  The Parties subsequently met and conferred multiple times to negotiate, *inter alia*, the scope of requests, production of documents, and search terms.  (*Id.*)  Lincare also agreed to a rolling production of documents, pursuant to which it initially produced hundreds of documents in response to certain of Plaintiffs' discovery requests.  (*Id.*)

### D.    Settlement Negotiations

During the Litigation, Plaintiffs' Counsel engaged in several discussions with Lincare

regarding the merits of their claims. (Fistel Dec. at ¶5) While engaged in discovery, and before Lincare responded to the Amended Complaint, the Parties agreed to participate in an in-person mediation with Steven R. Jaffe, Esq. of Upchurch Watson White & Max Mediation Group, on February 20, 2018, in Tampa, Florida. (*Id.*) Mr. Jaffe is a highly respected and experienced mediator, with extensive experience in class action litigation, including data breach cases. (*Id.*)

In advance of mediation, the Parties held separate telephonic sessions with Mr. Jaffe and submitted detailed mediation statements to him. (*Id.*) On February 20, 2018, the Parties participated in a 15-hour mediation session with Mr. Jaffe, ultimately reaching an agreement-in-principle as to the relief and structure of a proposed settlement. (*Id.*) Upon conclusion of mediation, the Parties agreed to continue to negotiate the remaining settlement terms in good faith, and to negotiate and draft a comprehensive settlement agreement and related documents. (*Id.*)

Between February 20, 2018 and May 11, 2018, the Parties continued to negotiate the terms of the Settlement, culminating in the execution of the Agreement on May 14, 2018.[2] (*Id.*)

## III.   <u>TERMS OF THE PROPOSED SETTLEMENT</u>

The complete terms of the proposed Settlement are set forth in the concurrently filed Settlement Agreement and Release, and are summarized below.

---

[2] Following agreement on all material terms of the Settlement, and with the assistance of Mr. Jaffe, the Parties entered into negotiations regarding the amount of fees and expenses to be paid by Lincare to Plaintiffs' Counsel. (Fistel Dec. at ¶5 n.3; Agmt. at ¶66) To date, those negotiations have been unsuccessful. The Parties will continue to negotiate, in good faith and with the assistance of Mr. Jaffe, in an attempt to resolve the fee and expense issue. (Fistel Dec. at ¶5 n.3) However, if those further negotiations are unsuccessful, Plaintiffs' Counsel reserves its right to file an application with the Court for its reasonable fees and expenses in connection with the Litigation, and Defendant reserves its right to oppose the amounts requested therein. (*Id.*; Agmt. at ¶66) Lincare has agreed that Plaintiffs' Counsel is entitled to a reasonable award of attorneys' fees and expenses in an amount that would fairly compensate Plaintiffs' Counsel for the risks they undertook in commencing and prosecuting the Litigation on a contingency basis and for the benefits obtained for and conferred upon Plaintiffs and the Settlement Class through prosecution of the Litigation and negotiation of the Settlement, subject to Court approval. (Agmt. at ¶66)

A.      **The Settlement Class**

The proposed Settlement Class is defined as follows:

All current and former employees of Lincare Holdings Inc., including its subsidiaries and affiliated companies, who, on or about February 3, 2017, had their personally-identifiable information, including names, addresses, social security numbers, and/or W-2 information, compromised and/or disseminated by Lincare to a third-party or parties, without authorization or consent.

(Ex. 1 at ¶26)

B.      **The Settlement Benefits**

1.      **The Settlement Fund**

The Settlement provides direct and valuable economic relief to Settlement Class Members who were impacted by the Phishing Attack.  In consideration for the Settlement Class Members' release of claims (Agmt. at §XI.), Lincare has agreed to establish a Settlement Fund totaling $875,000 that will be used to pay "Out-of-Pocket Loss Claims" and "Eligible Incidents Claims." (*Id.* at ¶¶33-34)  Class Members are entitled to receive payment for Out-of-Pocket Loss Claims *or* Eligible Incidents Claims, but not for both.  (*Id.* at ¶37)  For Out-of-Pocket Loss Claims, there is an aggregate of $550,000 available to eligible Class Members seeking payment of up to $1,000 for previously unreimbursed charges and expenses fairly traceable to the Phishing Attack ("Out-of-Pocket Losses").  (*Id.* at ¶¶14, 37(a))  Before submitting an Out-of-Pocket Loss Claim, a Class Member must first submit a claim for reimbursement from the InfoArmor identity theft insurance that Lincare previously provided to impacted employees after the Phishing Attack.  (*Id.*)

The Settlement Fund also allocates an aggregate of $325,000 for Class Members seeking payment for "Eligible Incidents" of identity theft that are fairly traceable to the Phishing Attack. (*Id.* at ¶¶6, 37(b))  Eligible Incidents for which Class Members may seek payment under the Settlement include: (i) the filing of a fraudulent tax return using a Settlement Class Member's name or PII; (ii) the opening of a fraudulent loan (including, for example, a mortgage or student

- 7 -

loan) using a Settlement Class Member's name or PII; (iii) the opening of a fraudulent credit card using a Settlement Class Member's name or PII; and (iv) the filing of a fraudulent/false unemployment claim using a Settlement Class Member's name or PII, with an aggregate of $325,000 in such compensation available to the Settlement Class. (*Id.* at ¶37(b)) Payments for Eligible Incidents Claims are capped at $500 per each Eligible Incident, and a Class Member may only submit up to two Eligible Incident Claims. (*Id.*)

Once the Settlement Administrator has reviewed and approved validly-submitted Out-of-Pocket Loss Claims and Eligible Incidents Claims and determined any *pro rata* adjustment, the Settlement Administrator will issue payment from the Settlement Fund to Class Members in the form of mailed checks.[3] (*Id.* at ¶¶37, 43)

### 2. Enhanced Credit and Identity Monitoring Protection Services Through TransUnion

The Settlement provides that, beginning on February 1, 2019 (*i.e.*, at the expiration of the InfoArmor services that Lincare previously made available to Class Members), Lincare will make available to all Settlement Class Members two additional years of complimentary Credit and Identity Monitoring and Protection through TransUnion's "MyTrueIdentity" package, which includes, among many other important benefits: $1,000,000 of deductible-free identity theft insurance; comprehensive identity monitoring; access to an identity restoration program; access to credit, identity, and insurance specialists; comprehensive 3-bureau credit monitoring and alerts; access to TransUnion credit lock; and online credit dispute access. (*Id.* at ¶35) Lincare will pay the costs of these TransUnion services separate from and in addition to all other consideration and relief provided or offered by Lincare as part of the Settlement. (*Id.*)

---

[3] The Distribution and Allocation Plan is attached as Exhibit D to the Agreement.

### 3. Enhanced Data Security Measures

Under the Settlement, Lincare has implemented, and/or has agreed to implement, and agrees to maintain, the following Enhanced Data Security Measures to protect the Personally Identifiable Information of its employees and former employees:

a. <u>Data Risk Assessment</u>.  Lincare performs, and will continue to perform, an external HIPAA Risk Assessment at least every two (2) years, as well as an Annual Risk Analysis, that identifies material internal and external risks to the security of employees' Personally Identifiable Information stored on Lincare's systems.

b. <u>Head of Information Technology ("IT")</u>.  Lincare will continue to maintain a Head of IT to coordinate and be responsible for the company's program(s) to protect the security of employees' Personally Identifiable Information.  The Head of IT shall also be responsible for implementing and monitoring the company's data security incident response program(s).  The Head of IT shall have training on pertinent cybersecurity, risk management, and data breach and security incident response issues.

c. <u>Updated Spam Filter</u>.  Lincare has implemented, and will continue to implement and maintain, an updated spam filter to assist in distinguishing valid and forged emails and preventing the dissemination of personal and confidential information to unauthorized third-parties. The company's spam filter includes: (i) spam filtering for company emails; (ii) Web and internet filtering to secure the company's network from harmful websites and malware; and (iii) mechanisms to automatically report phishing activity, including EXTERNAL notifications within email subject lines.

d. <u>Email Notifications</u>.  Lincare has implemented, and will continue to implement and maintain, updated email tags to assist in distinguishing emails emanating from external sources.

e. <u>Employee Education</u>.  Lincare has provided and will continue to provide training and/or guidance to educate its workforce on an annual basis concerning the following: (i) information security issues; (ii) privacy awareness and the importance of protecting Personally Identifiable Information; and (iii) the importance of identifying and avoiding phishing scams.

(Agmt. at ¶36)

### C. Proposed Settlement Notice Plan

Subject to the Court's approval, the Parties have agreed to a Notice Program with three primary components: (1) Mail Notice, (2) a Telephone Hotline with corresponding call center for Settlement Class Members, and (3) Notice posted on a Settlement Website.  (*Id.* at ¶¶11, 50)

The Settlement Administrator will send direct Mail Notice[4] to all Class Members for whom Lincare can ascertain a mailing address from its records with reasonable effort, as updated using a National Change of Address database. (*Id.* at ¶50) For Mail Notices returned undeliverable with forwarding address information, the Settlement Administrator will re-mail the Mail Notice to the updated address. (*Id.*) For Mail Notices returned undeliverable without forwarding address information, the Settlement Administrator will use reasonable efforts to identify updated mailing addresses and will re-mail the Mail Notice to the extent updated addresses are identified. (*Id.*)

The Settlement Administrator will also establish a Telephone Hotline and corresponding call center as a means for Settlement Class Members to obtain Notice of and information about the Settlement, as well as to request a mailed copy of Claim Forms.[5] (*Id.* at ¶¶11, 25, 46-47, 50)

Finally, the Settlement Administrator will establish a Settlement Website as a means for Settlement Class Members to submit claims and to obtain Notice of and information about the Settlement, through and including hyperlinked access to the Agreement, the Notice, the Preliminary Approval Order, the Claim Form, the Amended Complaint, all briefing in support of final approval of the settlement, including Plaintiffs' Counsel's fee and expense application, and such other documents as Plaintiffs' Counsel and Lincare agree to post, or that the Court orders posted, on the Settlement Website. (*Id.* at ¶¶11, 24, 46–47, 49-50, 54) These documents will remain on the Settlement Website at least until Final Approval. (*Id.* at ¶24) The Notice Program also provides Settlement Class Members with information concerning the process for objection and/or exclusion, including the time and method for objecting or requesting exclusion and that

---

[4] The proposed Postcard Notice and Long Form Notice to be sent to Settlement Class Members are attached as Exhibits B and C, respectively, to the Agreement.

[5] The proposed Claim Form to be sent to Settlement Class Members is attached as Exhibit A to the Agreement.

Settlement Class Members may make an appearance through counsel.  (*Id.* at ¶¶49, 51-52)

Lincare will pay the costs of providing Notice to Settlement Class Members and the implementation of the Notice Plan including, but not limited to, the Settlement Administrator's fees.  (*Id.* at ¶¶33, 48, 56)  Lincare has agreed to pay these costs separate from and in addition to all other consideration and relief offered or provided by Lincare as part of the Settlement.  (*Id.*)

### D.    Service Awards

Plaintiffs' Counsel will request, and Lincare agrees not to oppose, Service Awards of $1,000 for each Settlement Class Representative, which are intended to compensate those individuals for their efforts in the Litigation on behalf of the Settlement Class.  (Agmt. at ¶¶33, 65)  Any Court-approved Service Awards will be paid by Lincare separate from and in addition to all other consideration and relief offered or provided by Lincare as part of the Settlement.  (*Id.*)

### E.    Attorneys' Fees and Expenses

In consideration of the benefits obtained for and conferred upon Plaintiffs and the Settlement Class in the Litigation, Lincare agrees to pay Plaintiffs' Counsel its reasonable attorneys' fees and expenses incurred in connection with the Litigation (the "Fee and Expense Award").[6]  (Agmt. at ¶¶33, 66)  The Fee and Expense Award will be paid by Lincare separate from and in addition to all other consideration and relief offered or provided by Lincare to the Settlement Class as part of the Settlement.  (*Id.*)

### F.    Release

As consideration and in exchange for the Settlement benefits, Plaintiffs, their Counsel, and

---

[6] The Parties have been engaged in a good faith effort to reach an agreement as to the Fee and Expense Award, and intend to continue such efforts.  However, to the extent the Parties cannot reach an agreement, Class Counsel will submit the issue to the Court for determination.  (Agmt. at ¶66)  Plaintiffs' Counsel will not seek attorneys' fees or expenses exceeding the amounts listed for Plaintiffs' Counsel's attorneys' fees (*i.e.*, $950,000) or expenses (*i.e.*, $75,000) in the Postcard Notice and Long Form Notice, attached to the Agreement as Exhibits B and C, respectively.  (*Id.*)

the Settlement Class Members, as of the Effective Date, have agreed to fully release and forever discharge Lincare and all of its affiliates set forth in the Agreement, of any and all liabilities, rights, claims, actions, causes of action, demands, damages, penalties, costs, attorneys' fees, losses, and remedies, whether known or unknown, existing or potential, suspected or unsuspected, liquidated or unliquidated, legal, statutory, or equitable, that result from, arise out of, are based upon, or relate to the Phishing Attack that were or could have been alleged in the Litigation, including, without limitation, any claims, actions, causes of action, demands, damages, penalties, losses, or remedies relating to, based upon, resulting from, or arising out of: (1) the theft, exposure, or disclosure of Settlement Class Members' PII; (2) Lincare's maintenance, retention, storage, and destruction of Settlement Class Members' PII; (3) Lincare's information security policies, procedures, and practices or training; and (4) Lincare's notice of the Phishing Attack to Settlement Class Members. (Agmt. at ¶¶33, 60-61, 64)  In turn, Lincare has agreed to release Plaintiffs and their Counsel from any claims related to the institution, prosecution, and settlement of the Litigation.  (*Id.* at ¶¶62-64)

## IV.    THE COURT SHOULD GRANT PRELIMINARY APPROVAL

### A.    Applicable Legal Standards

Pursuant to Rule 23(e)(2), a class action settlement must be "fair, reasonable, and adequate."  Class settlement approval is a "straight-forward" two-step process, whereby the Court must first determine whether the proposed settlement warrants preliminary approval.  *See Butler-Jones v. Sterling Casino Lines, L.P.*, No. 6:08-cv-1186-Orl-35DAB, 2009 U.S. Dist. LEXIS 136900, at *11 (M.D. Fla. Aug. 11, 2009).  "[T]he court's primary objective at [the preliminary approval stage] is to establish whether to direct notice of the proposed settlement to the class, invite the class's reaction, and schedule a final fairness hearing."  Newberg on Class Actions §13:10 (5th ed.).  Thus, upon preliminary approval, the Parties will provide Class Members with notice, and the Court may more fully weigh the merits of the Settlement at the Final Approval Hearing.  *Id.*

At this stage, "the Court need not make a final determination of the fairness, reasonableness, and adequacy of the proposed settlement," but rather "must make a preliminary finding that the proposed settlement is sufficiently fair, reasonable, and adequate on its face to warrant presentation to the class members." *Nolan v. Integrated Real Estate Processing, LP*, No. 3:08-cv-642-J-34HTS; 2009 U.S. Dist. LEXIS 136890, at *17 (M.D. Fla. Sep. 9, 2009). Indeed, "[p]reliminary approval is appropriate where the proposed settlement is the result of the parties' good faith negotiations, there are no obvious deficiencies and the settlement falls within the range of reason." *In re Checking Account Overdraft Litig.*, 275 F.R.D. 654, 661 (S.D. Fla. 2011). In assessing whether preliminary approval is warranted, "the Court should not conduct a trial on the merits." *In re Motorsports Merch. Antitrust Litig.*, 112 F. Supp. 2d 1329, 1333 (N.D. Ga. 2000). Instead, the Court should "give considerable weight to the views of experienced counsel as to the merits of the settlement." *Ressler v. Jacobson*, 822 F. Supp. 1551, 1552 (M.D. Fla. 1992).

The proposed Settlement readily meets these standards. As such, Plaintiffs respectfully submit that the Settlement should be preliminarily approved so that notice can be provided to Settlement Class Members, and the Final Approval Hearing can be set.

### B.    The Proposed Settlement Falls Well Within the Range of Reasonableness

As a threshold matter, preliminary approval is warranted here because the proposed Settlement is the product of serious, arm's length negotiations between informed counsel. *See In re Checking Account Overdraft Litig.*, 275 F.R.D. at 661 ("Settlement negotiations that involve arm's length, informed bargaining with the aid of experienced counsel support a preliminary finding of fairness."). Notably, in negotiating the Settlement, the Parties were assisted by Mr. Jaffe, a well-respected mediator with experience in nationwide data breach litigation. *Leidel v. Project Inv'rs, Inc.*, No. 9:16-cv-80060-KAM, 2016 U.S. Dist. LEXIS 150009, at *4 (S.D. Fla. Oct. 26, 2016) (use of "an experienced mediator with particular expertise" in subject matter at

- 13 -

issue supported good-faith nature of the settlement).  The Parties' hard-fought negotiations, which spanned from February 2018 through May 2018, resulted in an exemplary settlement that easily falls within the range of reasonableness.

The reasonableness of the proposed Settlement is further highlighted when "the amount and form of relief contained in the settlement" are measured against the merits of Plaintiffs' case and their likelihood of success at trial.  *Saccoccio v. JP Morgan Chase Bank, N.A.*, 297 F.R.D. 683, 692 (S.D. Fla. 2014) (citation omitted).  Here, the proposed Settlement directly addresses the harms alleged in the Amended Complaint and correspondingly provides multiple forms of relief to the Class.  As detailed above, the Settlement confers significant cash benefits, prophylactic Credit and Identity Monitoring and Protection, and meaningful enhancements to Lincare's data security practices.  The class-wide benefits achieved here compare favorably to other similar class action data breach settlements approved by courts around the country.  *See, e.g.*, *In re Anthem, Inc. Data Breach Litig.*, No. 5:15-md-2617 (N.D. Cal) (Dkt. Nos. 869-5, 869-8); *In re The Home Depot, Inc., Customer Data Sec. Breach Litig.*, No. 1:14-md-2583 (N.D. Ga.) (Dkt. Nos. 181-2, 226-1); *In re Target Corp. Customer Data Sec. Breach Litig.* ("Target"), No. 0:14-md-2522 (D. Minn.) (Dkt. No. 645); *In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.* ("Heartland"), No. 4:09-md-2046 (S.D. Tex.) (Dkt. Nos. 57, 75); *In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.* ("Countrywide"), No. 3:08-md-1998 (W.D. Ky.) (Dkt. No. 236).

The relief provided under the Settlement is certainly reasonable, adequate and fair when viewed against the backdrop of the legal challenges Plaintiffs would face if litigation proceeds. (Fistel Dec. at ¶2)  Indeed, while Plaintiffs are confident in the merits of their claims, the risks involved in prosecuting this Litigation through trial are substantial.  As an initial matter, Lincare has filed motions to dismiss, challenging Plaintiffs' Article III standing and the sufficiency of

Plaintiffs' claims.  Lincare argued in the motions that Plaintiffs failed to plead sufficient facts concerning causation, an essential element of their claims.  (Dkt. No. 36 at pp. 7-19)  Lincare also averred that Plaintiff Scott lacks standing because his injuries are too speculative and abstract, and moreover "symptomatic of a larger issue plaguing the class because all class members similarly situated to Scott also lack Article III standing." (*Id.* at pp. 19-26)  Finally, Lincare moved to strike certain class allegations, arguing Plaintiffs cannot satisfy the Rule 23 commonality, typicality, or predominance requirements and thus cannot certify the class.  (*Id.* at pp. 26–35)  Plaintiffs believe they would prevail on the motion to dismiss and to strike, but again success is far from certain.

Courts have recognized the type of risks and uncertainty faced by plaintiffs in class action data breach cases.  For example, in a class action involving similar data breach allegations, Judge Sale of the District of Kansas highlighted the specific legal challenges faced by Plaintiffs here:

> The Novelty and Difficulty of the Questions: Again, the motion to dismiss briefing and multiple discovery disputes in this case evidenced the novelty of the questions that would play a key role in this case. These questions include (a) Article III standing for data breach victims; (b) the duty of care owed by an employer to its employees when collecting and storing their W-2 Form information; (c) whether a defendant may obtain absent class member discovery in a data breach case; (d) what type of damages are available at trial; and (e) whether Plaintiff [] could obtain class certification of a class of data breach victims (an issue of first impression in the Tenth Circuit).

*Hapka v. Carecentrix, Inc.*, No. 2:16-cv-2372, 2018 U.S. Dist. LEXIS 68186, at *6 (D. Kan. Feb. 15, 2018).  Yet another district court in a data breach case has gone on to say that individualized issues of injury, causation, and damage may defeat class certification.  *See In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*, 293 F.R.D. 21, 33 (D. Me. 2013) (predominance was not satisfied due to court's concern over "a trial involving individual issues for each class member as to what happened to his/her data and account, what he/she did about it, and why").

Another legal hurdle Plaintiffs would face is Lincare's likely assertion that Plaintiffs' claims are subject to a class action waiver provision in their employment agreements with Lincare.

- 15 -

Plaintiffs are confident that any such class action waiver provisions would be found unenforceable and/or unconscionable, but nevertheless this argument poses a significant risk to Plaintiffs' ability to litigate on a class-wide basis. Thus, given the ongoing legal challenges of this case and the real risk that Plaintiffs and the Class would recover ***nothing*** if litigation were to continue, the proposed Settlement is plainly adequate and deserves preliminary approval. (Fistel Dec. at ¶2)

Finally, the stage of the proceedings and experience and views of counsel favor preliminary approval of the Settlement. *See Ressler*, 822 F. Supp. at 1552; *Lipuma v. Am. Express Co.*, 406 F. Supp. 2d 1298, 1324 (S.D. Fla. 2005). At this point in the Litigation, Plaintiffs "had access to sufficient information to adequately evaluate the merits of the case and weigh the benefits of settlement against further litigation." *Id.* (*See* Fistel Dec. at ¶9) Before filing the Complaint, Plaintiffs' Counsel devoted significant time to researching the facts and law surrounding the Phishing Attack and Plaintiffs' claims, including, *inter alia*: investigating Lincare's response to the Phishing Attack, and Lincare's data security practices; reviewing data security industry practices; analyzing the law of several states and jurisdictions; and researching other data breach litigation nationwide. (*Id.* at ¶3) Thereafter, Plaintiffs' Counsel engaged in vigorous preparation, review, and negotiation of discovery, retained and worked extensively with a cybersecurity expert, prepared extensively for and participated in a full-day mediation, and engaged in protracted settlement negotiations with Lincare and its counsel. (*Id.* at ¶¶4-5) This work, combined with their experience in successfully prosecuting complex consumer class actions, gave Plaintiffs' Counsel the necessary insight to negotiate the best relief possible for the Class. (*Id.* at ¶9)

Based on the foregoing, preliminary approval of the proposed Settlement is warranted.[7]

---

[7] In the event the Court disapproves, rejects, or alters any of the Settlement terms contained in the Agreement, the Agreement shall be considered null and void, and the certification for settlement purposes of the Settlement Class should be vacated; all of the Parties obligations under the

## V.    CERTIFICATION OF THE SETTLEMENT CLASS FOR SETTLEMENT PURPOSES IS APPROPRIATE

Rule 23(e) requires judicial approval for the compromise of claims brought on a class basis. A class may be certified "solely for purposes of settlement where a settlement is reached before a litigated determination of the class certification issue." *Figueroa v. Sharper Image Corp.*, 517 F. Supp. 2d 1292, 1318 n.19 (S.D. Fla. 2007). A settlement class must satisfy all requirements of Rules 23(a) and (b), but the manageability concerns of Rule 23(b)(3) are not at issue. *See Amchem Prods. v. Windsor*, 521 U.S. 591, 597 (1997) ("Whether trial would present intractable management problems . . . is not a consideration when settlement-only certification is requested."). And while the Court's class certification analysis "may entail some overlap with the merits of the plaintiff's underlying claim, Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage." *Diakos v. HSS Sys., LLC*, 137 F. Supp. 3d 1300, 1306 (S.D. Fla. 2015) (citing *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 465-66 (2013)). As discussed below, certification of the Class for settlement purposes is appropriate here.[8]

### A.    The Settlement Class Satisfies the Requirements of Rule 23(a)

Certification is appropriate under Fed. R. Civ. P. 23(a) if: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class;

---

Agreement shall cease to be of any force and effect; and the Parties shall return to the *status quo ante* in the Litigation as of May 13, 2018. (Agmt. at ¶72) Also in the event of such a termination, all of the Parties' respective pre-Settlement claims and defenses will be preserved. (*Id.*)

[8] Courts nationwide have routinely certified settlement classes in cases involving similar allegations of data breach and disclosure of PII. *See, e.g.*, *Castillo v. Seagate Tech. LLC*, No. 3:16-cv-1958, 2017 U.S. Dist. LEXIS 178852, at *3-4 (N.D. Cal. Oct. 19, 2017); *Smith v. Triad of Ala., LLC*, No. 1:14-cv-324, 2017 U.S. Dist. LEXIS 38574, at *12-45 (M.D. Ala. Mar. 17, 2017); *Target.*, 309 F.R.D. 482, 484-90 (D. Minn. Sep. 15, 2015); *Burrows v. Purchasing Power, LLC*, No. 1:12-cv-22800, 2013 U.S. Dist. LEXIS 189397, at *3-5 (S.D. Fla. Oct. 4, 2013); *Heartland*, 851 F. Supp. 2d 1040, 1051-60 (S.D. Tex. 2012); *Countrywide*, 2009 U.S. Dist. LEXIS 119870, at *12-15.

- 17 -

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the

class; and (4) the representative parties will fairly and adequately protect the interests of the class."

### 1.    Numerosity

Rule 23(a)(1) requires that the proposed settlement class be "so numerous that joinder of

all class members is impracticable."  Fed. R. Civ. P. 23(a)(1).  Plaintiffs "need only show that it

would be extremely difficult or inconvenient to join all members of the class," not that joinder is

"impossible."  *Thorpe v. Walter Inv. Mgmt., Corp.*, No. 1:14-cv-20880, 2016 U.S. Dist. LEXIS

33637, at *16 (S.D. Fla. Mar. 16, 2016).  "Practicability of joinder depends on many factors,

including the size of the class, ease of identifying its numbers and determining their addresses, the

facility of making service on them if joined, and their geographic dispersion."  *Silva-Arriaga v.

Tex. Express, Inc.*, 222 F.R.D. 684, 688 (M.D. Fla. 2004) (citing *Kilgo v. Bowman Transp., Inc.*,

789 F.2d 859, 878 (11th Cir. 1986)).  Courts require only that plaintiffs provide "some evidence

of the number of members in the purported class, or at least a reasonable estimate of that number."

*Leszczynski v. Allianz Ins.*, 176 F.R.D. 659, 669 (S.D. Fla. 1997).

As Plaintiffs have learned through discovery, the Settlement Class here is comprised of

2,032 current and former Lincare employees who had their PII compromised in the Phishing

Attack.  (Fistel Dec. at ¶2 n.2)  Numerosity is therefore easily satisfied here.  *See, e.g.*, *Coles v.

Stateserv Med. of Fla., LLC*, No. 8:17-cv-829-T-17-AEP, 2018 U.S. Dist. LEXIS 39393, at *7

(M.D. Fla. Mar. 5, 2018) (numerosity satisfied with 500 putative class members).

### 2.    Commonality

Rule 23(a)(2) is satisfied where there are "questions of law or fact common to the class."

"Commonality requires the plaintiff to demonstrate that the class members 'have suffered the same

injury,'" alleging claims "capable of class-wide resolution, 'which means that determination of its

truth or falsity will resolve an issue that is central to the validity of each one of the claims in one

stroke.'"  *Prindle v. Carrington Mortg. Servs., LLC*, No. 3:13-cv-1349-J-34PDB, 2016 U.S. Dist. LEXIS 112881, at *9 (M.D. Fla. Aug. 24, 2016).  "The commonality element is generally satisfied when a plaintiff alleges that defendants have engaged in a standardized course of conduct that affects all class members."  *Bush v. Calloway Consol. Grp. River City, Inc.*, No. 3:10-cv-841-J-37MCR, 2012 U.S. Dist. LEXIS 40450, at *21 (M.D. Fla. Mar. 26, 2012).

Here, the Amended Complaint asserts numerous common questions of law and fact that arise from a singular event—the Lincare Phishing Attack.  These common issues include, *inter alia*: (1) whether Lincare failed to act reasonably in protecting the PII of Plaintiffs and the Class Members in its care, custody, and control; (2) whether Lincare's actions, and/or failures to act, caused the PII of Plaintiffs and the Class Members to be stolen, accessed, and/or disseminated without authorization; and (3) whether Plaintiffs and the Class Members are entitled to damages, and, if so, the nature of such damages.  (*See* Am. Compl. at ¶125)  Because all of these common issues arise out of a single incident, the Phishing Attack, commonality is satisfied.  *See, e.g.*, *Countrywide*, 2009 U.S. Dist. LEXIS 119870, at *16-17 ("All class members had their private information stored in Countrywide's databases at the time of the data breach.").

### 3.      Typicality

Rule 23(a)(3) requires "the claims or defenses of the representative parties [be] typical of the claims or defenses of the class."  This requirement "measure[s] whether a sufficient nexus exists between the claims of the named representative and those of the class at large," *Hines v. Widnall*, 334 F.3d 1253, 1256 (11th Cir. 2003), and is satisfied if claims "arise from the same event or pattern or practice and are based on the same legal theory," *Ault v. Walt Disney World Co.*, 692 F.3d 1212, 1216 (11th Cir. 2012).  "[F]actual differences among the claims of the putative class members do not defeat certification."  *Cooper v. Southern Co.*, 390 F.3d 695, 714 (11th Cir. 2004).

Here, Plaintiffs' claims and the claims of Settlement Class Members arise from the same

Phishing Attack and Lincare's conduct in connection therewith. (*See* Am. Compl. at ¶126) They are also based on the same legal theory that Lincare failed to protect their PII. (*Id.*) Because there is a "sufficient nexus" between the Plaintiffs' claims and the claims of Settlement Class Members, the typicality requirement is satisfied. *Hines*, 334 F.3d at 1256.

### 4.    Adequacy of Representation

Adequacy is satisfied if "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). In assessing adequacy, courts employ "a two-part test: (1) whether plaintiffs have interests antagonistic to the interests of other the class members; and (2) whether the proposed class' counsel has the necessary qualifications and experience to lead the litigation." *Columbus Drywall & Insulation, Inc. v. Masco Corp.*, 258 F.R.D. 545, 555 (N.D. Ga. 2007). "The fact that the named plaintiffs may have suffered greater damages does not indicate that named plaintiffs possess interests antagonistic to other plaintiffs." *Id.*

Both prongs are satisfied here. First, Plaintiffs' interests are directly aligned with those of the Settlement Class Members. Each of the Plaintiffs were former Lincare employees who were impacted by the Phishing Attack, so they share the same claims as all other Settlement Class Members. (*See* Am. Compl. at ¶¶14-16) Furthermore, Plaintiffs have demonstrated their commitment to vigorously prosecuting the Litigation by working with Plaintiffs' Counsel to prepare and file complaints against Lincare, providing documents related to the Phishing Attack to Plaintiffs' Counsel, keeping informed of the Litigation and settlement proceedings, and otherwise assisting in the prosecution of the Litigation. (Fistel Dec. at ¶10) Second, as further detailed below, Plaintiffs have retained experienced and qualified counsel that are fully capable of litigating complex class actions such as this. (*Id.* at ¶8) Accordingly, adequacy is readily satisfied.

### B.    The Settlement Class Satisfies the Requirements of Rule 23(b)(3)

In addition to satisfying all of the criteria of Rule 23(a), a party seeking class certification

must satisfy one of the requirements of Rule 23(b). Rule 23(b)(3) requires that "questions of law or fact common to class members predominate over any questions affecting only individual members," and that class treatment is "superior to other available methods for fairly and efficiently adjudicating the controversy." *Id.*

### 1. Predominance

Predominance "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623. "Common issues of fact and law predominate if they have a direct impact on every class member's effort to establish liability and on every class member's entitlement to injunctive and monetary relief." *Terrill v. Electrolux Home Prods.*, 295 F.R.D. 671, 688 (S.D. Ga. 2013). Predominance does not require that all questions of law or fact be common, but rather that "a significant aspect of the case . . . can be resolved for all members of the class in a single adjudication." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998).

The predominance test is satisfied here because Plaintiffs allege a "common course of conduct" arising out of the Lincare Phishing Attack that affects all members of the Settlement Class in the same manner. Other courts have recognized that the same type of predominant common issues arising from a data breach. *See, e.g.*, *Countrywide*, 2009 U.S. Dist. LEXIS 119870, at *25-28 (finding predominance where proof would focus on data breach defendant's conduct both before and during the theft of class members' personal information); *Heartland*, 851 F. Supp. 2d at 1059 (finding predominance where "several common questions of law and fact ar[ose] from a central issue: Heartland's conduct before, during, and following the data breach, and the resulting injury to each class member from that conduct").

### 2. Superiority

Because common issues predominate here, a class settlement is superior to other methods

for fairly and efficiently adjudicating this Litigation.  "The inquiry into whether the class action is the superior method for a particular case focuses on increased efficiency."  *Agan v. Katzman & Korr, P.A.*, 222 F.R.D. 692 (S.D. Fla. 2004).  Judicial economy is best served by resolving Plaintiffs' claims as a class.  *See Terrill*, 295 F.R.D. at 697 ("A single, coordinated proceeding is superior to hundreds of discrete and disjointed suits addressing the same facts and legal issues.").

### C.    The Court Should Appoint Settlement Class Counsel and Liaison Counsel

A court that certifies a class must appoint class counsel.  Fed. R. Civ. P. 23(c)(1)(B).  In doing so, the Court "must consider: (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class."  Fed. R. Civ. P. 23(g)(1)(A).  Here, Plaintiffs respectfully request the Court approve Johnson Fistel, LLP ("Johnson Fistel") as Class Counsel, and Tragos, Sartes & Tragos, PLLC ("Tragos") as Liaison Counsel.

Prior to the filing of and throughout this case, Plaintiffs' Counsel have worked cooperatively and efficiently and committed substantial time and resources to this case.  This work has included, *inter alia*: (1) investigating the Phishing Attack, Lincare's response to the Phishing Attack, and Lincare's data security practices; (2) reviewing data security industry practices; (3) researching and analyzing the law of several states and jurisdictions, and other data breach litigation nationwide, to evaluate the legal claims and defenses; (4) preparing and filing two class action complaints; (5) analyzing, researching for, and preparing to respond to two motions to dismiss and to strike; (6) vigorously conducting and working closely with Defendant's counsel to conduct discovery; (7) communicating regularly with and preparing numerous filings for the Court regarding case management and scheduling; (8) preparing for, traveling to, and participating in a full-day, 15-hour mediation session; and (9) extensively negotiating the proposed Settlement,

preparing the settlement documentation, and moving for preliminary approval.  (Fistel Dec. at ¶¶3-5)  Given their respective qualifications in class and complex litigation such as the Litigation, and their demonstrated commitment to the Litigation, Plaintiffs respectfully submit that the Court should appoint Johnson Fistel as Class Counsel and Tragos as Liaison Counsel.  (*Id.* at ¶8)

## VI.    **NOTICE TO THE SETTLEMENT CLASS SHOULD BE APPROVED**

Under Rule 23(c)(2)(B), "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  *Id.*  The best notice practicable must "contain information that a reasonable person would consider to be material in making an informed, intelligent decision of whether to opt-out or remain a member of the class and be bound by the final judgment."  *In re Taylor Bean & Whitaker Mortg. Corp.*, No. 3:09-bk-7047-JAF, 2010 Bankr. LEXIS 3306, at *24 (Bankr. M.D. Fla. Sep. 27, 2010).

Here, the Parties have agreed to a comprehensive Notice Program to be administered by the Settlement Administrator.  (Agmt. at §IX)  Settlement Class Members who can reasonably be identified from Lincare's records will receive direct and individual Mail Notice.  (*Id.*)  In addition, the Notice Program also requires the establishment of a Settlement Website from which Settlement Class Members may access the Settlement, the Claim Form, and other related documents and information about the Settlement.  (*Id.*)  The Notice Program also includes establishment of a Telephone Hotline and corresponding call center as a means for Settlement Class Members to obtain Notice of and information about the Settlement, as well as to request a mailed copy of Claim Forms.  (*Id.*)  These means of providing Notice are designed and intended to reach as many Settlement Class Members as possible, and to apprise them of the procedures and deadlines for submitting Claims, objections, and exclusions.  *See In re Domestic Air Transp. Antitrust Litig.*,

141 F.R.D. 534, 539, 549-53 (N.D. Ga. 1992).

The Notice will state in plain, easily understood language the following information: "(i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses, (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members." Fed. R. Civ. P. 23(c)(2)(B). The proposed forms of Notice also provide further details about the Settlement and its benefits; they are written in plain English and explain how Settlement Class Members can obtain further details and assistance. (Agmt. at ¶49; Fistel Dec. at ¶7)

The Notice Program ensures Settlement Class Members' due process rights are protected, and is the best notice practicable under Rule 23(c). (Fistel Dec. at ¶7) It should thus be approved.

## VII.   THE COURT SHOULD ADOPT THE DEADLINES SET FORTH IN THE PRELIMINARY APPROVAL ORDER

To facilitate the orderly resolution of this Litigation, the Parties propose the Court adopt the following deadlines governing the Settlement, as set forth in the Preliminary Approval Order:[9]

| Event | Proposed Deadline |
|---|---|
| Deadline to mail Postcard Notice, activate Telephone Hotline, post Notice to the Settlement Website (the "Notice Deadline") | Thirty (30) calendar days after entry of the Preliminary Approval Order |
| Deadline for Plaintiffs to file Motion for Final Approval of Settlement, and Motion for Service Awards to Plaintiffs and an Award of Attorneys' Fees and Reimbursement of Expenses | Thirty (30) calendar days after the Notice Deadline |
| Deadline for Settlement Class Members to submit Opt-Out Requests for Exclusion from Settlement Class | Sixty (60) calendar days after the Notice Deadline |
| Deadline for Settlement Class Members to submit Objections to any portion of the Settlement, Service | Sixty (60) calendar days after the Notice Deadline |

---

[9] A proposed Order preliminarily approving class action, certifying Settlement Class, directing Notice to the Settlement Class, and appointing Settlement Class Representatives, Class Counsel, and Liaison Counsel, is submitted herewith and attached hereto as Exhibit A.

| Event | Proposed Deadline |
|---|---|
| Awards Request, or Requested Attorneys' Fees and Expense Reimbursement | |
| Deadline for Defendant to submit a response to the any request for an award of attorneys' fees and expense reimbursement filed by Plaintiffs' Counsel | Sixty (60) calendar days after the Notice Deadline |
| Deadline to file, by affidavit or declaration, Proof of Publication and Mailing of Notice | Seven (7) calendar days prior to the Final Approval Hearing |
| Deadline for Plaintiffs to submit a response to any Settlement Class Member Objections, including objections to the Fees and Expense Request, and to file further papers in support of the Settlement and Service Awards Request | Seven (7) calendar days prior to the Final Approval Hearing |
| Deadline for Settlement Class Members to submit Claim Form (the "Claims Deadline") | No later than ninety (90) calendar days after the Notice Deadline |
| Final Approval Hearing | At least one hundred (120) calendar days after the Notice Deadline, at the Court's convenience |

## VIII.  **CONCLUSION**

Based on the foregoing, Plaintiffs respectfully request, and Defendant does not oppose, that the Court grant the relief requested herein.

DATED:  May 14, 2018                     **JOHNSON FISTEL, LLP**

                                                */s/ Michael I. Fistel, Jr.*
                                          MICHAEL I. FISTEL, JR. (admitted *pro hac vice*)

                                          Michael I. Fistel, Jr. (admitted *pro hac vice*)
                                          David A. Weisz (admitted *pro hac vice*)
                                          Murray House
                                          40 Powder Springs Street
                                          Marietta, GA  30064
                                          Telephone: (770) 200-3108
                                          Facsimile: (770) 200-3101
                                          Email: MichaelF@johnsonfistel.com
                                                    DavidW@johnsonfistel.com

**JOHNSON FISTEL, LLP**
Frank J. Johnson (admitted *pro hac vice*)
Phong L. Tran (admitted *pro hac vice*)
600 W Broadway, Suite 1540
San Diego, CA  92101
Telephone: (619) 230-0063
Facsimile: (619) 255-1856
Email: FrankJ@johnsonfistel.com
        PhongT@johnsonfistel.com

*Counsel for Plaintiffs, and Proposed Class Counsel on*
*behalf of the Proposed Settlement Class*

**TRAGOS, SARTES & TRAGOS, PLLC**
Peter L. Tragos
Florida Bar. No.: 0106744
601 Cleveland Street, Suite 800
Clearwater, FL  33755
Telephone: (727) 441-9030
Facsimile: (727) 441-9254
Email: PeterTragos@greeklaw.com
        Linda@greeklaw.com

*Counsel for Plaintiffs and Proposed Liaison Counsel*
*on behalf of the Proposed Settlement Class*

## RULE 3.01(G) CERTIFICATION

The undersigned counsel certifies that he has conferred with Defendant's counsel in a good faith attempt to resolve the issues raised in this motion, and that Defendant's counsel does not oppose the relief requested herein.

DATED: May 14, 2018

**JOHNSON FISTEL, LLP**

*/s/  Michael I. Fistel, Jr.*

MICHAEL I. FISTEL, JR. (admitted *pro hac vice*)

40 Powder Springs Street
Marietta, GA  30064
Telephone: (770) 200-3104
Facsimile: (770) 200-3101
Email: MichaelF@johnsonfistel.com

## CERTIFICATE OF SERVICE

The undersigned counsel certifies that on this day, he electronically filed the above and foregoing with the Clerk of Court using the CM/ECF system, which will automatically send email notification of such filing to all attorneys of record.

**JOHNSON FISTEL, LLP**

*/s/  Michael I Fistel, Jr.*

MICHAEL I. FISTEL, JR. (admitted *pro hac vice*)

Murray House
40 Powder Springs Street
Marietta, GA  30064
Telephone: (770) 200-3104
Facsimile: (770) 200-3101
Email: MichaelF@johnsonfistel.com

- 27 -