## SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release ("Agreement") is made and entered into on May 14, 2018, by and among Settlement Class Representatives (as defined in Paragraph 28), for themselves and on behalf of the Settlement Class (as defined in Paragraphs 26 and 27), and Lincare Holdings Inc. ("Lincare"), and subject to preliminary and final Court approval as required by Rule 23 of the Federal Rules of Civil Procedure. Settlement Class Representatives and Lincare enter into this agreement by and through their respective counsel.  As provided herein, Lincare and Settlement Class Representatives hereby stipulate and agree that, in consideration of the promises and covenants set forth in this Agreement and upon entry by the Court of a final order and judgment, all claims of the Settlement Class Representatives and the Settlement Class that have or could have been asserted against Lincare in the action titled *Andrew Giancola, Raymond T. Scott, and Patricia Smith v. Lincare Holdings Inc.*, Case No. 8:17-cv-002427-VMC-AAS, pending in the United States District Court for the Middle District of Florida, Tampa Division (the "Litigation"), shall be settled and compromised upon the terms and conditions contained herein. Settlement Class Representatives and Lincare collectively are referred to herein as the "Parties."

I.  **RECITALS**

    A.    On February 3, 2017, a cyber-criminal posing as a high-level Lincare executive emailed a Lincare Human Resources employee and requested W-2 information for all Lincare employees.

    B.    Believing the email to have emanated from this company executive, the Human Resources employee responded with "reply to" emails and attached W-2 data for a certain number of employees of Lincare and its affiliates (the "Phishing Attack").

    C.    On or about February 10, 2017, Lincare sent notice of the Phishing Attack to all impacted current and former Lincare employees notifying them that their Personally Identifiable Information (as defined in Paragraph 15) may have been compromised as a result of the Phishing Attack.  Lincare sent additional notices to impacted employees after the February 10 notice, and made available to all impacted employees two years of complimentary credit monitoring, remediation services, and identity theft insurance through InfoArmor, Inc. ("InfoArmor").

    D.    On October 16, 2017, Andrew Giancola, Raymond T. Scott, and Patricia Smith filed the Litigation against Lincare, asserting claims against it for alleged negligence, breach of fiduciary duty, breach of implied contract, and violation of Florida's Deceptive and Unfair Trade Practices Act.  On December 11, 2017, Lincare moved to dismiss the complaint in its entirety (the "Motion to Dismiss").  Subsequently, on December 29, 2017, and before responding to the Motion to Dismiss, the Plaintiffs (as defined in Paragraph 16) filed their First Amended Class Action Complaint (the "Amended Complaint").  The Plaintiffs' filing of the Amended Complaint mooted the pending Motion to Dismiss.  Before Lincare responded to the Amended Complaint, the Parties requested, and the Court granted, a stay in the Litigation so that the Parties could attend mediation. The Amended Complaint was the operative pleading at the time of mediation.

E.     Prior to the Court's issuance of the stay, the Parties investigated the facts and law underlying the claims asserted in the Litigation through formal and informal discovery. Plaintiffs served Interrogatories and two separate Requests for Production on Lincare.  Lincare responded to the written discovery requests and produced hundreds of pages of documents to Plaintiffs.   Lincare served Interrogatories and Requests for Production on all three Plaintiffs. Plaintiffs responded to the written discovery requests and produced more than 150 pages of documents to Lincare.  The Parties also engaged in informal discovery.

F.     On February 20, 2018, the Parties participated in a formal mediation session with mediator Steven Jaffe, Esq., of Upchurch, Watson, White & Max.  The formal mediation session lasted more than 15 hours.  Prior to the mediation, the Parties engaged in numerous telephone conferences negotiating directly among counsel and preparing for mediation, including separate conversations with the mediator.  These discussions also continued after the mediation and involved the negotiation of numerous documents related to this Settlement, including, with the assistance of the mediator, the Agreement.

G.     At the mediation, the Parties reached an understanding in principle concerning the general terms of a proposed settlement for the Litigation requiring submission of a final settlement agreement to the Court for preliminary approval.  The Parties did not discuss attorneys' fees at the mediation, or at any time prior to agreeing to the essential terms of the Parties' Settlement (as defined in Paragraph 20).

H.     Throughout the Litigation, and prior to and after the mediation, Class Counsel conducted an examination and investigation of the facts and law relating to the matters set forth in the Amended Complaint and engaged in numerous discussions with Lincare regarding the claims therein.

I.     The Parties now agree to settle the Litigation in its entirety, without any admission of liability, with respect to all Released Claims (as defined in Paragraph 60) of the Settlement Class.  The Parties intend this Agreement to bind the Settlement Class Representatives, Lincare, and all Settlement Class Members (as defined in Paragraph 22) who do not timely and properly exclude themselves from the Settlement.

NOW, THEREFORE, in light of the foregoing, for good and valuable consideration, the receipt of which is hereby mutually acknowledged, it is hereby stipulated and agreed by the Parties that the Litigation be settled, compromised, and dismissed on the merits and with prejudice as to Lincare, subject to Court approval as required by Federal Rule of Civil Procedure 23, on the following terms and conditions:

## II.     **DEFINITIONS**

In addition to the terms defined at various points within this Agreement, the following defined terms apply throughout this Agreement:

1.     "Claims Deadline" means ninety (90) days after the Notice Deadline.

2.     "Claim Form" or "Claim" means the form Settlement Class Members must submit to be eligible for relief under the terms of the Settlement.  The proposed Claim Form, which

may be modified for formatting purposes, is attached hereto as Exhibit A.

3.     "Class Counsel" refers to the following attorneys who are counsel for Plaintiffs and seek to be appointed as counsel for the Settlement Class:

> **JOHNSON FISTEL, LLP**
> Michael I. Fistel. Jr.
> David A. Weisz
> Murray House
> 40 Powder Springs Street
> Marietta, GA 30064
> Telephone: (770) 200-3104
> Facsimile: (770) 200-3101
> Email:   MichaelF@johnsonfistel.com
>             DavidW@johnsonfistel.com

4.     "Court" refers to the Honorable Virginia M. Hernandez Covington, United States District Court Judge for the Middle District of Florida, Tampa Division, or such other judge to whom the Litigation may be assigned.

5.     "Effective Date" means the first business day after which all of the following events have occurred: (a) Class Counsel and Lincare's counsel have executed this Agreement; (b) the Court has entered a Final Judgment; and (c) the time in which to seek review, rehearing, or appeal, of the Final Judgment has expired without any review, rehearing or appeal having been sought or taken, *i.e.*, thirty (30) days after entry of judgment, or the Settlement is affirmed on appeal or review without material change, no other appeal or petition for rehearing or review is pending, and the time period during which further petition for hearing, review, appeal, or certiorari could be taken has finally expired.  The Effective Date shall not be altered in the event the Court declines to approve, in whole or in part, the payment of attorneys' fees and expenses in the amounts that Class Counsel requests ("Fee Request").  Further, the Effective Date shall not be altered in the event that an appeal is filed with the sole issue on appeal being the Fee and Expense Award awarded to Class Counsel (as defined in Paragraph 66).

6.     "Eligible Incident" means an incident of fraud perpetrated on a Settlement Class Member, which occurred between February 3, 2017, and the date of a timely submitted Claim Form, and which is fairly traceable to the Phishing Attack.  Eligible Incidents include and are limited to the following: (i) the filing of a fraudulent/false tax return using a Settlement Member's name or Personally Identifiable Information; (ii) the opening of a fraudulent/false loan (including, but not limited to, for example, a mortgage or student loan) using a Settlement Class Member's name or Personally Identifiable Information; (iii) the opening of a fraudulent/false credit card using a Settlement Class Member's name or Personally Identifiable Information; and (iv) the filing of a fraudulent/false unemployment claim using a Settlement Class Member's name or Personally Identifiable Information.

7.     "Final Approval" means the date that the Court grants final approval of the Settlement and determines the amount of fees and expenses to be awarded to Class Counsel and the amount of the Service Awards to the Settlement Class Representatives (as defined in Paragraph

65).  In the event that the Court issues separate orders addressing the foregoing matters, then Final Approval means the date of the last of such orders.

8.    "Final Judgment" means the final judgment and order of dismissal to be entered by the Court upon Final Approval that is the same in all material respects as set forth in Section X.

9.    "Notice" means the forms of notice to be disseminated to Settlement Class Members informing them, *inter alia*, about the Agreement; their rights to participate in the Settlement; to opt-out, or to object to same; and to appear at the Final Approval Hearing, and instructing them on how to submit a Claim.  Notice shall be substantially in the Postcard Notice and Long Form Notice forms attached as Exhibits B and C, respectively, to this Agreement and approved by the Court.

10.    "Notice Deadline" means thirty (30) days after entry of the Preliminary Approval Order (as defined in Paragraph 44).

11.    "Notice Program" means the plan for disseminating Notice, as set forth in this Agreement, which consists of: (1) a direct-mail postcard notice to those Settlement Class Members for whom Lincare can ascertain a mailing address from its records with reasonable effort, as updated using a National Change of Address database ("Mail Notice"); (2) creation of a Telephone Hotline and corresponding call center for Settlement Class Members; and (3) notice posted on the Settlement Website (as defined in Paragraph 24).  The forms of notice shall be substantially in the Postcard Notice and Long Form Notice forms attached as Exhibits B and C, respectively, to this Agreement and approved by the Court.  The Notice Program shall be effected in substantially the manner provided in Section IX.

12.    "Objection Deadline" means sixty (60) days after the Notice Deadline.

13.    "Opt-Out Deadline" means sixty (60) days after the Notice Deadline.

14.    "Out-of-Pocket Loss" means any out-of-pocket loss or unreimbursed charge or expense that is fairly traceable to the Phishing Attack, which was incurred between February 3, 2017, and the date of a timely submitted Claim, and which has not already been fully reimbursed by Lincare or InfoArmor.  Settlement Class Members must submit Reasonable Documentation, including documentation demonstrating that the Settlement Class Member first submitted the claim to the InfoArmor identity theft insurance plan that Lincare offered to impacted employees after the Phishing Attack, and that the claim was denied under the insurance plan or the insurance plan otherwise did not compensate the Class Member for all losses incurred.  Non-exhaustive examples of Out-of-Pocket Loss include unreimbursed expenses related to fraud and identity theft resulting from, or related to, the Phishing Attack, as well as any consequential expenses related to the Phishing Attack, including late fees, declined payment fees, overdraft fees, returned check fees, customer service fees, card cancellation or replacement fees, credit-related costs related to purchasing credit reports, credit monitoring, or identity theft protection, costs to place a freeze or alert on credit reports, professional fees incurred in connection with identity theft, and costs to replace driver's licenses, state identification cards, or social security cards.

15.    "Personally Identifiable Information" means identifiable information

including, without limitation, name, address, telephone number, birthday, social security number, financial information, payment card account numbers, expiration dates, card verification values, and insurance information potentially compromised as a result of the Phishing Attack.

16.    "Plaintiffs" means the plaintiffs named in the Amended Complaint.

17.    "Plaintiffs' Counsel" refers to the attorneys of record who have appeared on behalf of and as counsel for the Plaintiffs in this Litigation:

> **JOHNSON FISTEL, LLP**
> Michael I. Fistel, Jr.
> David A. Weisz
> Murray House
> 40 Powder Springs Street
> Marietta, GA 30064
> Telephone: (770) 200-3104
> Facsimile: (770) 200-3101
> Email: MichaelF@johnsonfistel.com
>            DavidW@johnsonfistel.com
>
>                 – and –
>
> **JOHNSON FISTEL, LLP**
> Frank J. Johnson
> Phong L. Tran
> 600 West Broadway, Suite 1540
> San Diego, CA 92101
> Telephone: (619) 230-0063
> Facsimile: (619) 255-1856
> Email: FrankJ@johnsonfistel.com
>            PhongT@johnsonfistel.com
>
>                 – and –
>
> **TRAGOS, SARTES & TRAGOS, PLLC**
> Peter L. Tragos
> 601 Cleveland St., Suite 800
> Clearwater, FL 33755
> Telephone: (727) 441-9030
> Facsimile: (727) 441-9254
> Florida Bar No.: 0106744
> Email: PeterTragos@greeklaw.com
>            Linda@greeklaw.com

18.    "Reasonable Documentation" means documentation submitted by a Settlement Class Member in support of either an Out-of-Pocket Loss Claim or Eligible Incident Claim, which tends to show that the Out-of-Pocket Loss or Eligible Incident in question is fairly traceable to the Phishing Attack.  Non-exhaustive examples of Reasonable Documentation include

credit card statements, bank statements, invoices, official governmental correspondence, and receipts. A valid Claim cannot be supported solely by a personal certification, declaration, or affidavit from the claimant or the claimant's representative(s), but such information may be considered with other Reasonable Documentation.

19.   "Releasing Parties" means the Settlement Class Representatives, all Settlement Class Members who do not timely and properly exclude themselves from the Settlement, and each of their respective heirs, assigns, beneficiaries, and successors.

20.   "Settlement" means the settlement into which the Parties have entered to resolve the Litigation. The terms of the Settlement are as set forth in this Agreement, including the exhibits hereto.

21.   "Settlement Administrator" means Epiq Systems, Inc.

22.   "Settlement Class Members" or "Settlement Class" means all persons who fall within the settlement class definition set forth in Paragraph 26.

23.   "Settlement Fund" means the amount of Eight Hundred Seventy-Five Thousand Dollars and No Cents ($875,000.00) that Lincare will pay pursuant to Paragraphs 34, 37, and 38, as part of the consideration for the releases of all claims as provided in this Agreement.

24.   "Settlement Website" means the website that the Settlement Administrator will establish as soon as practicable following issuance of the Preliminary Approval Order, but prior to the commencement of the Notice Program, as a means for Settlement Class Members to obtain notice of and information about the Settlement, through and including hyperlinked access to this Agreement, the Notice, the Preliminarily Approval Order, the Claim Form, the Amended Complaint, and such other documents as Class Counsel and Lincare agree to post, or that the Court orders posted, on the website. These documents shall remain on the Settlement Website at least until Final Approval. The Settlement Website shall include an "Important Dates" section that prominently lists the notable dates and deadlines concerning the Settlement, as set forth herein. The URL of the Settlement Website, if available, shall be www.LHISettlement.com. If this URL is unavailable, the Settlement Website URL will be agreed upon by Class Counsel and Lincare. Settlement Class Members shall be able to submit Claim Forms electronically via the Settlement Website. The Settlement Website shall not include any advertising and shall remain operational until at least thirty (30) days after the Claims Deadline.

25.   "Telephone Hotline" means the toll-free telephone number that the Settlement Administrator will establish as soon as practicable following issuance of the Preliminary Approval Order, but prior to the commencement of the Notice Program, as a means for Settlement Class Members to obtain notice of and information about the Settlement. Settlement Class Members shall be able to request a mailed copy of Claim Forms telephonically via the Telephone Hotline. The Telephone Hotline shall not include any advertising and shall remain operational until at least thirty (30) days after the Claims Deadline.

## III.   SETTLEMENT CLASS

26.   For settlement purposes only, the Parties agree that the Court should certify

the following Settlement Class pursuant to Fed. R. Civ. P. 23(b)(3), defined as:

> All current and former employees of Lincare Holdings Inc., including its subsidiaries and affiliated companies, who, on or about February 3, 2017, had their personally-identifiable information, including names, addresses, social security numbers, and/or W-2 information, compromised and/or disseminated by Lincare to a third-party or parties, without authorization or consent.

If for any reason whatsoever this Settlement is not finalized or the Settlement as detailed in this Agreement is not finally approved by the Court, the certification of the Settlement Class shall be void, and the Parties and the Litigation will return to the status as it existed on May 13, 2018, and no doctrine of waiver, estoppel, or preclusion will be asserted in any proceedings, in response to any motion seeking class certification, or otherwise asserted at any other stage of the Litigation or in any other proceeding.

27.    Excluded from the Settlement Class is the Judge presiding over this Litigation, the Judge's immediate family members, and any members of the Judge's judicial staff, the officers and directors of Lincare and their immediate family members, Class Counsel and their immediate family members, and persons who timely and validly request exclusion from the Settlement Class, and the legal representatives of each of these excluded classes of persons.

28.    For settlement purposes only, Class Counsel shall seek, and Lincare shall not oppose, the appointment of Johnson Fistel, LLP as Class Counsel and appointment of Plaintiffs, Andrew Giancola, Raymond T. Scott, and Patricia Smith, as settlement class representatives ("Settlement Class Representatives"). The Settlement Class Representatives will move for certification of the Settlement Class contemporaneously with their motion for preliminary approval of the Settlement. Subject to the provisions set forth in Paragraphs 26 above and 30, 32, and 72 below, Lincare agrees not to contest certification of the Settlement Class.

## IV.    NO ADMISSION OF LIABILITY

29.    Lincare vigorously disputes the claims alleged in the Litigation and does not by this Agreement or otherwise admit any liability or wrongdoing of any kind. Lincare has agreed to enter into this Agreement solely to avoid the further expense, inconvenience, and distraction of burdensome and protracted litigation, and to be completely free of any further claims that were asserted or could have been asserted in the Litigation.

30.    Class Counsel and Settlement Class Representatives believe that the claims asserted in the Litigation have merit, and they have examined and considered the benefits to be obtained under the proposed Settlement set forth in this Agreement and the risks associated with the continued prosecution of the Litigation. Class Counsel and the Settlement Class Representatives have concluded that the proposed Settlement set forth in this Agreement is fair, adequate, reasonable, and in the best interests of the Settlement Class Members.

31.    The Parties understand and acknowledge that this Agreement constitutes a compromise and settlement of disputed claims. No action taken by the Parties either previously or in connection with the negotiations or proceedings connected with this Agreement shall be

deemed or construed to be an admission of the truth or falsity of any claims or defenses heretofore made, or an acknowledgment or admission by any party of any fault, liability, or wrongdoing of any kind whatsoever.

32.      Neither the Settlement, nor any act performed or document executed pursuant to or in furtherance of the Settlement: (i) is or may be deemed to be, or may be used as, an admission of, or evidence of, the validity of any claim made by Plaintiffs or Settlement Class Members, or of any wrongdoing or liability of the Released Parties; or (ii) is or may be deemed to be, or may be used as, an admission of, or evidence of, any fault or omission of any of the Released Parties, in the Litigation or in any proceeding in any court, administrative agency, or other tribunal.

## V.   SETTLEMENT CONSIDERATION

33.      In exchange for Plaintiffs' and Settlement Class Members' release of claims as set forth in Section XI, Lincare will provide the following relief as part of the Settlement, as described below: (i) Establishment of a Settlement Fund pursuant to which Settlement Class Members may receive monetary relief for Out-of-Pocket Loss Claims or Eligible Incident Claims; (ii) Additional Relief through Lincare's provision of certain enhanced Credit and Identity Monitoring and Protection services (as defined in Paragraph 35); (iii) Non-Monetary Relief, which includes Lincare's adoption and maintenance of certain Enhanced Data Security Measures (as defined in Paragraph 36); and (iv) Additional Class Benefits, which include Lincare's agreement to pay, separately from and in addition to all other consideration and relief provided or offered by Lincare as part of the Settlement, the costs of administration of the Settlement and Class Notice, any Service Awards approved for or awarded to the Settlement Class Representatives (as defined in Paragraph 65), and any Fee and Expense Award approved for or awarded to Class Counsel (as defined in Paragraph 66).

34.      Establishment of Settlement Fund.  The Settlement Fund will total Eight Hundred Seventy-Five Thousand Dollars and No Cents ($875,000.00).  The Settlement Fund will be used to pay Out-of-Pocket Loss Claims and Eligible Incident Claims, as provided for and consistent with the separate monetary caps (for Out-of-Pocket Loss Claims and Eligible Incident Claims) in Section VI, below.  To create the Settlement Fund, within twenty (20) calendar days following the Effective Date, Lincare shall deposit the sum of Eight Hundred Seventy-Five Thousand Dollars and No Cents ($875,000.00) into an escrow account.  Class Counsel and/or the Settlement Administrator shall timely furnish to Lincare any required account information, wiring instructions, or necessary forms before the payment is made.  The Settlement Fund shall be a Court-approved Qualified Settlement Fund for federal tax purposes pursuant to Treas. Reg. § 1.468B-1.  The Settlement Administrator shall be responsible for all administrative, accounting, and tax compliance activities in connection with the Settlement Fund and the monies deposited into the Settlement Fund, including any filing necessary to obtain Qualified Settlement Fund status pursuant to Treas. Reg. § 1 .468B-l.  Lincare shall provide to the Settlement Administrator any documentation necessary to facilitate obtaining Qualified Settlement Fund status for the Settlement Fund pursuant to Treas. Reg. § 1.468B-l.  All taxes on income or interest generated by the Settlement Fund, if any, shall be paid out of the Settlement Fund before the payment of any claims provided in Paragraph 37 below.

35.     <u>Additional Relief to Settlement Class Members</u>.  Lincare previously made available to the Settlement Class Members two years of InfoArmor's "PrivacyArmor" package, which included, among other things, (i) credit monitoring; (ii) identity restoration services; (iii) identity theft insurance; (iv) monthly credit score; (v) annual credit report; (vi) financial monitoring; (vii) compromised credentials; (viii) wallet protection; (ix) social monitoring; (x) password protection; (xi) solicitation reduction; and (xii) digital exposure report.  These complimentary services will expire in February 2019.  At the expiration of the "PrivacyArmor" package, all Settlement Class Members will be eligible to receive two additional years of complimentary enhanced credit and identity monitoring and protection services ("Credit and Identity Monitoring and Protection") through TransUnion's "MyTrueIdentity" package, which includes, among other things, (i) initial online 3-in-1 credit report and *VantageScore* credit score with analysis; (ii) unlimited online access to Settlement Class Members' TransUnion credit report that can be updated daily; (iii)  unlimited access to Settlement Class Members' VantageScore credit score from TransUnion, with analysis, that can be updated daily; (iv) credit score trending; (v) round-the-clock comprehensive 3-bureau credit monitoring and email alerts when key changes occur; (vi) instant TransUnion hard inquiry alerts; (vii) access to TransUnion credit lock; (viii) online credit dispute access; (ix) toll-free access to credit specialists; (x) up to $1,000,000 identity theft insurance with no deductible (policy limitations and exclusions may apply); (xi) unlimited toll-free 24/7 access to identity theft insurance specialists; (xii) unlimited online access to credit management and identity theft prevention resources located in the online education center; (xiii) dark web internet monitoring; (xiv) address change monitoring; (xv) public record monitoring; (xvi) arrest and incarceration monitoring; (xvii) social security number monitoring; (xviii) password management; and (xix) access to an Identity Restoration Program that provides assistance in the event a Settlement Class Member's identity is compromised.  Lincare will pay the costs of these TransUnion services separate and apart from the Settlement Fund provided for in Paragraph 34, above.  All eligible Settlement Class Members who submit a valid Claim Form requesting the TransUnion "MyTrueIdentity" package shall receive enrollment instructions from the Settlement Administrator and be eligible to receive two years of the foregoing complimentary enhanced Credit and Identity Monitoring and Protection services commencing on February 1, 2019.  All costs associated with the TransUnion "MyTrueIdentity" package provided for in this Agreement shall be borne by and separately paid by Lincare.

36.     <u>Non-Monetary Relief (Enhanced Data Security Measures)</u>. Lincare has implemented, and/or has agreed to implement, and agrees to maintain, security measures to protect the Personally Identifiable Information of its employees and former employees for a period of no less than two (2) years after the Effective Date ("Enhanced Data Security Measures").  The Enhanced Data Security Measures include the following:

   a.   <u>Data Risk Assessment</u>.  Lincare performs, and will continue to perform, an external HIPAA Risk Assessment at least every two (2) years, as well as an Annual Risk Analysis, that identifies material internal and external risks to the security of employees' Personally Identifiable Information stored on Lincare's systems.

   b.   <u>Head of Information Technology ("IT")</u>.  Lincare will continue to maintain a Head of IT to coordinate and be responsible for the company's program(s) to protect the security of employees'

Personally Identifiable Information. The Head of IT shall also be responsible for implementing and monitoring the company's data security incident response program(s). The Head of IT shall have training on pertinent cybersecurity, risk management, and data breach and security incident response issues.

c. <u>Updated Spam Filter</u>. Lincare has implemented, and will continue to implement and maintain, an updated spam filter to assist in distinguishing valid and forged emails and preventing the dissemination of personal and confidential information to unauthorized third-parties. The company's spam filter includes: (i) spam filtering for company emails; (ii) Web and internet filtering to secure the company's network from harmful websites and malware; and (iii) mechanisms to automatically report phishing activity, including EXTERNAL notifications within email subject lines.

d. <u>Email Notifications</u>. Lincare has implemented, and will continue to implement and maintain, updated email tags to assist in distinguishing emails emanating from external sources.

e. <u>Employee Education</u>. Lincare has provided and will continue to provide training and/or guidance to educate its workforce on an annual basis concerning the following: (i) information security issues; (ii) privacy awareness and the importance of protecting Personally Identifiable Information; and (iii) the importance of identifying and avoiding phishing scams.

## VI.   <u>DISTRIBUTION PLAN AND CLAIMS PROCESS</u>

37.    Settlement Class Members are eligible to receive monetary relief from the Settlement Fund for either Out-of-Pocket Loss Claims or Eligible Incident Claims, as set forth below, by submitting a valid and timely Claim Form supported by Reasonable Documentation. In order to be deemed timely, Claim Forms must be submitted or postmarked by the last day of the Claims Deadline. There will be no obligation to honor or make any payment in connection with any Claim Forms submitted or postmarked after the Claims Deadline, even if such Claim Form otherwise would be valid. The Settlement Fund shall be distributed to eligible claimants in the manner provided below:

a. <u>Out-of-Pocket Loss Claims</u>: An amount up to, but not exceeding, Five Hundred Fifty Thousand Dollars and No Cents ($550,000.00) of the Settlement Fund shall be used to compensate Settlement Class Members who suffered an Out-of-Pocket Loss, subject to the terms and conditions set forth herein and in the Claim Form attached hereto as Exhibit A ("Out-of-Pocket Loss Claimant"). Payments for Out-of-Pocket Loss claims shall be made within one hundred eighty (180) calendar days after the Effective Date, and shall be capped at One Thousand Dollars and No Cents ($1,000.00) per each eligible Out-of-Pocket Loss Claimant. To be eligible to receive up to, but not exceeding, One Thousand Dollars and No Cents ($1,000.00) pursuant to

this provision, an Out-of-Pocket Loss Claimant must submit a valid and timely Claim Form and Reasonable Documentation of Out-of-Pocket Losses on or before the Claims Deadline, and such Claim Form must be approved by the Settlement Administrator. Before submitting an Out-of-Pocket Loss Claim, an Out-of-Pocket Loss Claimant must first submit a claim through InfoArmor to the complimentary identity theft insurance Lincare provided to impacted employees after the Phishing Attack. Only if the insurance claim is denied in full or in part by InfoArmor, or if the Out-of-Pocket Loss Claimant does not receive a response from InfoArmor within thirty (30) calendar days, can the Out-of-Pocket Loss Claimant submit a claim for Out-of-Pocket Losses, and documentation of the denied insurance claim or documentation showing the date on which the insurance claim was sent to InfoArmor with a statement from the Out-of-Pocket Loss Claimant that the insurance claim has not yet been paid or denied, must accompany the Out-of-Pocket Loss Claimant's Claim Form. In the event that the total combined dollar amount of all valid and timely submitted Claims (which individually shall not exceed One Thousand Dollars and No Cents ($1,000.00) per Out-of-Pocket Loss Claimant) exceeds Five Hundred Fifty Thousand Dollars and No Cents ($550,000.00) in the aggregate, the cash payment to be provided to each Out-of-Pocket Loss Claimant shall be reduced on a pro rata basis, such that the aggregate dollar amount of the cash payments to all Out-of-Pocket Loss Claimants equals Five Hundred Fifty Thousand Dollars and No Cents ($550,000.00). The Settlement Administrator shall calculate any such pro rata reduction and distribute the monetary amount on such pro rata basis to the Out-of-Pocket Loss Claimants. Capping individual claims at One Thousand Dollars and No Cents ($1,000.00) per Out-of-Pocket Loss Claimant shall occur before any pro rata reduction occurs to reduce the aggregate of all approved claims to Five Hundred Fifty Thousand Dollars and No Cents ($550,000.00). Settlement Class Members are permitted to make only a single claim for Out-of-Pocket Losses from the Settlement Fund. Out-of-Pocket Loss Claimants whose claims for Out-of-Pocket Losses are approved in any amount are prohibited from also making a claim for any Eligible Incidents experienced, as set forth below.

        b.    <u>Eligible Incident Claims</u>:  An amount up to, but not exceeding, Three Hundred Twenty-Five Thousand Dollars and No Cents ($325,000.00) of the Settlement Fund shall be used to compensate Settlement Class Members who experienced an Eligible Incident, subject to the terms and conditions set forth herein and in the Claim Form attached hereto as Exhibit A ("Incident Claimants"). Payments for Eligible Incidents Claims shall be made within one hundred eighty (180) calendar days after the Effective Date, and shall be capped at Five Hundred Dollars and No Cents ($500.00) per each Eligible Incident, and further limited to only two (2) Eligible Incidents per Incident Claimant. To be eligible to receive Five Hundred Dollars and No Cents ($500.00) per Eligible Incident (for up to two (2) Eligible Incidents per Incident Claimant) pursuant to this provision, an Incident Claimant must submit a valid and timely Claim Form and Reasonable Documentation evidencing at least one Eligible Incident on or before the Claims Deadline and in compliance with the terms of the Claim Form attached hereto as Exhibit A, and such Claim Form must be approved by the Settlement Administrator. In the event that the total combined dollar amount of all valid and timely submitted Eligible Incident Claims (which individually shall not exceed Five Hundred Dollars and No Cents ($500.00) per Eligible Incident, and a maximum of two (2) Eligible Incidents per Incident Claimant) exceeds Three Hundred Twenty-Five Thousand Dollars and No Cents ($325,000.00) in the aggregate, the cash payment to be provided to each Incident Claimant shall be reduced on a pro rata basis, such that the aggregate dollar amount of the cash payments to all Incident Claimants equals Three Hundred Twenty-Five Thousand Dollars and No Cents ($325,000.00). The Settlement Administrator shall calculate any

such pro rata reduction and distribute the monetary amount on such pro rata basis to the Incident Claimants. Settlement Class Members are not permitted to receive a payment for Out-of-Pocket Losses as set forth in Paragraph 37(a), described above, and submit an Eligible Incident Claim or Eligible Incident Claims under this provision.

38.     Following issuance of monetary payments for Out-of-Pocket Loss Claims and Eligible Incident Claims, as set forth above, any unused and unpaid monies remaining in the Settlement Fund after the mailing of the last Settlement Class Member Claims check shall immediately revert back to and will be returned to Lincare, and the Settlement Administrator will deliver such reversionary monies to Lincare within five (5) business days after the mailing of the last Settlement Class Member Claims check. In addition, to the extent any claims checks issued to Settlement Class Members for Out-of-Pocket Loss Claims or Eligible Incident Claims have not been redeemed or cashed by the 185th calendar day following the mailing of the last Settlement Class Member Claims check, those additional monies corresponding to the unredeemed and uncashed claims checks shall also immediately revert back to and will be returned to Lincare, and the Settlement Administrator will deliver such reversionary monies to Lincare within five (5) business days after the 185th calendar day following the mailing of the last Settlement Class Member claims check.

39.     For each Claim Form submitted, the Settlement Administrator shall verify that each claimant who submits a Claim Form is in fact a Settlement Class Member, and shall have the discretion and authority to determine whether and to what extent the claimant is entitled to a cash payment for his or her Out-of-Pocket Loss Claim or Eligible Incident Claim, based on the submission of a valid and timely Claim Form, any Reasonable Documentation, and the other criteria set forth herein. To the extent the Settlement Administrator determines a Claim Form is deficient in whole or part (including any deficiency relating to the submission of supporting documentation), within ten (10) days of making such a determination, the Settlement Administrator shall notify the Settlement Class Member of the deficiencies and give the Settlement Class Member twenty (20) days to cure the deficiencies. Such notice shall inform the Settlement Class Member that he or she can either attempt to cure the deficiencies outlined in the notice, or dispute the determination in writing and request an appeal. If the Settlement Class Member attempts to cure the deficiencies but, at the sole discretion and authority of the Settlement Administrator, fails to do so, the Settlement Administrator shall notify the Settlement Class Member of that determination within ten (10) days of the determination. The notice shall inform the Settlement Class Member of his or her right to dispute the determination in writing and request an appeal within ten (10) days.

40.     If a Settlement Class Member disputes a determination in writing and requests an appeal, the Settlement Administrator shall provide Class Counsel and counsel for Lincare with a copy of the Settlement Class Member's dispute and Claim Form along with all documentation submitted by the Settlement Class Member. Class Counsel and Lincare's counsel (together "Counsel") will confer regarding the claim submission, and Counsel's agreement on approval or denial of the Settlement Class Member's claim, in whole or part, will be final. If Counsel cannot agree on approval or denial of the Settlement Class Member's claim, in whole or part, the dispute will be submitted to a Settlement Administrator Referee, who will be agreed upon by the Parties. The Settlement Administrator Referee will be a neutral party who was not previously involved in the consideration of the claim at issue. The Settlement Administrator

Referee's decision will be final and not subject to appeal or further review. Any costs associated with the Settlement Administrator Referee shall be paid out of the portion of the Settlement Fund from which the dispute arises (i.e., Out-of-Pocket Loss Claim or Eligible Incident Claim).

41.     To the extent the Settlement Administrator determines a Claim Form is valid and determines that a payment will be issued from the Settlement Fund for either an Out-of-Pocket Loss or Eligible Incident, within ten (10) days of making such a determination, the Settlement Administrator shall notify Lincare, through Lincare's counsel, and give Lincare fifteen (15) days to review the determination and determine whether to dispute the determination in writing and request an appeal.

42.     If Lincare disputes a Claim determination in writing and requests an appeal, Lincare, through its counsel, shall provide Class Counsel with a copy of the disputed Claim Form along with all documentation submitted by the Settlement Class Member and any relevant documentation from Lincare. Counsel will confer regarding the claim submission, and Counsel's agreement on approval or denial of the Settlement Class Member's claim, in whole or part, will be final. If Counsel cannot agree on approval or denial of the Settlement Class Member's claim, in whole or part, the dispute will be submitted to the Settlement Administrator Referee. The Settlement Administrator Referee's decision will be final and not subject to appeal or further review.

43.     The Settlement Administrator shall pay all approved claims from the Settlement Fund. Payments for approved claims shall be issued in the form of a mailed check consistent with deadlines in Paragraph 37(a) and (b) above.

## VII.     <u>PRELIMINARY APPROVAL</u>

44.     Upon execution of this Agreement by the Parties, Class Counsel shall promptly file a motion with the Court seeking an order granting preliminary approval of this Settlement ("Preliminary Approval Order"), substantially in the form attached hereto as Exhibit E. The motion for preliminary approval shall request that the Court: (i) preliminarily approve the terms of the Settlement as within the range of fair, adequate, and reasonable; (ii) provisionally certify the Settlement Class pursuant to Federal Rule of Civil Procedure 23(b)(3) and (e) for settlement purposes only; (iii) approve the Notice Program set forth herein and approve the form and content of the Notice; (iv) approve the procedures set forth in Section IX for Settlement Class Members to exclude themselves from the Settlement Class or to object to the Settlement; (v) stay all proceedings in the Litigation unrelated to the Settlement, pending Final Approval of the Settlement; (vi) stay and/or enjoin, pending Final Approval of the Settlement, any actions brought by Settlement Class Members concerning a Released Claim (as defined in Paragraph 60); (vii) appoint settlement class representatives and settlement class counsel; and (viii) schedule a Final Approval hearing for a time and date convenient for the Court, at which the Court will conduct an inquiry into the fairness of the Settlement, determine whether it was made in good faith and should be finally approved, substantially in the form of the proposed Final Judgment and Order of Dismissal with Prejudice attached hereto as Exhibit F ("Final Approval Order"), and determine

– 13 –

whether to approve Class Counsel's application for attorneys' fees and expenses and Service Awards ("Final Approval Hearing").

45.     Lincare shall provide notice of the Settlement to the appropriate state or federal officials in accordance with the Class Action Fairness Act of 2005 ("CAFA").

## VIII.   SETTLEMENT ADMINISTRATOR

46.     The Settlement Administrator shall administer various aspects of the Settlement as provided in Section VI, and perform such other functions as are specified for the Settlement Administrator elsewhere in this Agreement, including, but not limited to: (i) overseeing administration of the Settlement Fund; (ii) providing Mail Notice to Settlement Class Members as described in Section IX; (iii) establishing and operating the Settlement Website and the Telephone Hotline; (iv) administering the Claims processes; (v) approving and disapproving Claims submitted pursuant to the Claim Forms, and (vi) distributing cash payments according to the processes and criteria set forth herein and in the exhibits hereto.

47.     The duties of the Settlement Administrator, in addition to other responsibilities that are described in this Agreement, include:

a.     Obtaining from Lincare the name and mailing address of Settlement Class Members for the purpose of sending Mail Notice to Settlement Class Members to the extent that such information is reasonably available from Lincare's records and updating the addresses using a National Change of Address database;

b.     Obtaining from Lincare information necessary to establish a reasonably practical procedure to verify Settlement Class Members who, during the period beginning on or about February 3, 2017, and continuing through the present, had their Personally Identifiable Information, including names, addresses, social security numbers, and/or W-2 information, compromised and/or disseminated by Lincare to a third-party or parties, without authorization or consent;

c.     Establishing and maintaining a post office box for mailed written notifications of exclusion from the Settlement Class;

d.     Establishing and maintaining a secure Settlement Website allowing access only to the Settlement Class Members, Class Counsel, Lincare's counsel, and the Settlement Administrator;

e.     Establishing and maintaining the Telephone Hotline for Settlement Class Members to call with Settlement-related inquiries or request mailed copies of the electronic Claim Form;

f.     Responding to any mailed Settlement Class Member inquiries;

g.     Processing all written notifications of exclusion from the Settlement

Class;

h.  Providing weekly reports and, no later than ten (10) days after the Opt-Out Deadline, a final report to Class Counsel and Lincare's counsel, that summarizes the number of written notifications of exclusions received that week, the total number of written notifications of exclusions received to date, and other pertinent information as requested by Class Counsel or Lincare's counsel;

i.  In advance of the Final Approval Hearing, preparing an affidavit to submit to the Court that: (i) attests to implementation of the Notice Program in accordance with the Preliminary Approval Order; and (ii) identifies each Settlement Class Member who timely and properly provided written notification of exclusion from the Settlement Class;

j.  Reviewing, determining the validity of, approving or disapproving, and responding to all Claims submitted by Settlement Class Members, pursuant to criteria set forth in Section VI and the Distribution and Allocation Plan attached hereto as Exhibit D;

k.  After the Effective Date, processing and transmitting distributions to Settlement Class Members in accordance with Section VI and the exhibits attached hereto;

l.  Providing weekly reports and a final report to Class Counsel and Lincare that summarize the number of Claims since the prior reporting period, the total number of Claims received to date, the number of any Claims approved and denied since the prior reporting period, the total number of Claims approved and denied to date, and other pertinent information as requested by Class Counsel or Lincare; and

m.  Performing any function related to settlement administration at the agreed-upon instruction of Class Counsel and Lincare's counsel, including, but not limited to, verifying that cash payments have been distributed in accordance with Section VI and the exhibits attached hereto.

48.  All costs associated with the Settlement Administrator's provision of the services provided for in this Agreement shall be borne by and separately paid by Lincare.  Such payment by Lincare to the Settlement Administrator shall be separate from and in addition to Lincare funding the Settlement Fund as provided for in Paragraph 34, above, and funds paid by Lincare to provide Credit and Identity Monitoring and Protection services as additional relief to Settlement Class Members, as provided for in Paragraph 35, above.

## IX.    NOTICE, OPT-OUTS, AND OBJECTIONS

49.    Upon issuance of the Preliminary Approval Order regarding the Settlement, at the direction of Lincare, the Settlement Administrator will implement the Notice Program provided herein, using the forms of Notice approved by the Court in the Preliminary Approval Order, but, in any event, the Settlement Administrator will place the Mail Notices for delivery by the Notice Deadline.   The Notice will include, among other information: (i) a short and plain statement of the background of the Litigation and description of the nature and scope of Plaintiffs' claims; (ii) a description of the Settlement and the relief provided thereunder; (iii) an explanation of the scope and impact of the release provided under the Settlement; (iii) a statement that any relief to Settlement Class Members is contingent on the Court's approval of the Settlement; (iv) the manner and dates by which Settlement Class Members may object to or opt-out of the Settlement; (v) the date upon which the Final Approval Hearing will occur; and (vi) the web address of the Settlement Website at which Settlement Class Members may access this Agreement, the Claim Form, and other related documents and information concerning the Settlement.

50.    The Notice Program has three components: (1) Mail Notice; (2) Notice on the Settlement Website; and (3) the Telephone Hotline. The Settlement Administrator shall send direct Mail Notice to all Settlement Class Members for whom Lincare can ascertain a mailing address from its records with reasonable effort, as updated through the use of a National Change of Address database. For any Mail Notices that are returned undeliverable with forwarding address information, the Settlement Administrator shall re-mail the Mail Notice to the updated address as indicated.   For any Mail Notices that are returned undeliverable without forwarding address information, the Settlement Administrator shall use reasonable efforts to identify updated mailing addresses and shall re-mail the Mail Notice to the extent updated addresses are identified.   The Settlement Administrator need make only one attempt to re-mail any Mail Notice that is returned as undeliverable.

51.    The Notice shall include a procedure for a Settlement Class Member to exclude himself or herself from the Settlement Class by notifying the Settlement Administrator in writing of the intent to exclude himself or herself from the Settlement Class.   Such written notification must be postmarked no later than the Opt-Out Deadline, as specified in the Notice. The written notification must include: (i) the name of this Litigation; (ii) the individual's name and address; (iii) a statement that he or she wants to be excluded from the Litigation; and (iv) the individual's signature.   The Settlement Administrator shall provide the Parties with copies of all opt-out notifications, and a final list of all who have timely and validly excluded themselves from the Settlement Class, which Class Counsel may move to file under seal with the Court no later than ten (10) days prior to the Final Approval Hearing.   Any Settlement Class Member who does not timely and validly exclude himself or herself shall be bound by the terms of the Settlement.

52.    The Notice shall also include a procedure for Settlement Class Members to object to the Settlement and/or to Class Counsel's application for attorneys' fees and expenses, and Service Awards (as defined in Paragraph 65).   Objections to the Settlement or to the application for fees, costs, and expenses and Service Awards must be filed electronically with the Court, or mailed to the Clerk of the Court, Class Counsel, and Lincare's counsel.   For an objection to be considered by the Court, the objection must be: (a) electronically filed by the Objection Deadline; or (b) mailed first-class postage prepaid to the Clerk of Court, Class Counsel and

Lincare's counsel, at the addresses provided at the Settlement Website, and postmarked by no later than the Objection Deadline, as specified in the Notice. For an objection to be considered by the Court, the objection must also set forth the following:

a. the name of the Litigation;

b. the objector's full name, address, email address, and telephone number;

c. an explanation of the basis upon which the objector claims to be a Settlement Class Member;

d. all grounds for the objection, accompanied by any legal support for the objection;

e. the identity of all counsel who represent the objector, including any former or current counsel who previously represented the objector and may be entitled to compensation for any reason related to the objection to the Settlement, the fee application, or the application for Service Awards;

f. the identity of all counsel representing the objector who will appear at the Final Approval Hearing;

g. the number of times in which the objector has objected to a class action settlement within the five years preceding the date on which the objector files the objection, the caption of each case in which the objector has made such objections, and a copy of any orders related to or ruling upon the objector's prior such objections that were issued by the trial and appellate courts in each listed case;

h. the number of times in which the objector's counsel and/or counsel's law firm have objected to a class action settlement within the five years preceding the date that the objector files the objection, the caption of each case in which the counsel or the firm has made such objections, and a copy of any orders related to or ruling upon counsel's or the firm's prior such objections that were issued by the trial and appellate courts in each listed case;

i. any and all agreements that relate to the objection or the process of objecting, whether written or verbal, between the objector or objector's counsel and any other person or entity;

j. a list of any persons who will be called to testify at the Final Approval Hearing in support of the objection;

k. a statement confirming whether the objector intends to personally appear and/or testify at the Final Approval Hearing; and

l.     the objector's signature on the written objection (an attorney's signature is not sufficient).

53.     The Mail Notice portion of the Notice Program shall be completed by the Notice Deadline, excluding any re-mails for Mail Notices that are returned undeliverable.

54.     The Settlement Administrator shall post the Notice on the Settlement Website in the form agreed to by the Parties and approved by the Court. The Notice shall be posted on the Settlement Website by the Notice Deadline.

55.     Within seven (7) days after the Notice Deadline, the Settlement Administrator shall provide Class Counsel and Lincare's counsel with one or more affidavits confirming that the Mail Notice, posting of Notice on the Settlement Website, and creation of the Telephone Hotline were completed in accordance with the Parties' instructions and the Court's approval. Class Counsel shall file such affidavit(s) with the Court as an exhibit to or in conjunction with Settlement Class Representatives' motion for final approval of the Settlement.

56.     Lincare shall pay all costs and expenses associated with providing Notice to Settlement Class Members and the implementation of the Notice Plan including, but not limited to, the Settlement Administrator's fees. Such payment by Lincare shall be made separate from and in addition to Lincare funding the Settlement Fund, as provided for in Paragraph 34, above, and funds paid by Lincare to provide Credit and Identity Monitoring and Protection services as additional relief to Settlement Class Members, as provided for in Paragraph 35, above.

## X.   __FINAL JUDGMENT__

57.     Settlement Class Representatives' motion for preliminary approval of the Settlement will include a request to the Court for a scheduled date on which the Final Approval Hearing will occur. By no later than thirty (30) days after to the Notice Deadline, Plaintiffs shall file a motion for final approval of the Settlement and a motion for attorneys' fees and expenses, and for Service Awards. By no later than seven (7) days prior to the Final Approval Hearing, the Parties shall file responses, if any, to any Settlement Class Member objections, including any objections to the requested attorneys' fees and expense reimbursement, and to file additional papers in support of the Settlement or Service Awards request.

58.     At the Final Approval Hearing, the Court will consider Settlement Class Representatives' motion for final approval of the Settlement, and Class Counsel's application for attorneys' fees and expenses, and for Service Awards. In the Court's discretion, the Court also may hear argument at the Final Approval Hearing from any Settlement Class Members (or their counsel) who object to the Settlement or to the application for attorneys' fees and expenses, and for Service Awards, provided the objectors filed timely objections that meet all of the requirements listed in Paragraph 52, above.

59.     At or following the Final Approval Hearing, the Court will determine whether to enter the Final Judgment granting final approval of the Settlement, and whether to approve Class Counsel's request for attorneys' fees and expenses and the Service Awards. The proposed Final Judgment that will be filed with the motion for final approval shall be in a form agreed upon by Class Counsel and Lincare's counsel. Such proposed Final Judgment shall, among

other things:

a.   Determine that the Settlement is entered into in good faith, is fair, adequate, and reasonable, and is in the best interests of the Settlement Class;

b.   Determine that the Settlement includes no admission of liability by Lincare;

c.   Finally certify the Settlement Class for settlement purposes only;

d.   Determine that the Notice provided under the Notice Program satisfied Due Process requirements and Rule 23 by providing due, adequate, and sufficient notice to the Settlement Class;

e.   Dismiss the Litigation with prejudice;

f.   Bar and enjoin the Releasing Parties from asserting any of the Released Claims, as set forth in Section XI, including during the pendency of any appeal from the Final Judgment;

g.   Release Lincare and the Released Parties from the Released Claims, as set forth in Section XI;

h.   Release Plaintiffs and Plaintiffs' Counsel from any and all claims that Lincare may have now or in the future relating to the institution, prosecution, and settlement of the Litigation, as set forth in Section XI;

i.   Reserve the Court's continuing and exclusive jurisdiction over Lincare, and all Settlement Class Members (including all objectors), to administer, supervise, construe, and enforce this Agreement in accordance with its terms; and

j.   Contain a finding that, during the course of the Litigation, the Parties and their respective counsel at all times complied with the requirements of Rule 11 of the Federal Rules of Civil Procedure and all other similar laws relating to the institution, prosecution, defense, and/or settlement of this Litigation.

## XI.   **RELEASES**

60.   As of the Effective Date, the Releasing Parties, each on behalf of himself or herself and on behalf of his or her respective spouses, children, heirs, assigns, beneficiaries, and successors, shall automatically be deemed to have fully and irrevocably released and forever discharged Lincare, which includes Lincare Holdings Inc., and each of its present and former direct and indirect, domestic and foreign parents, subsidiaries, divisions, affiliates, predecessors, successors, and assigns, and the present and former directors, officers, employees, agents, insurers

or reinsurers, shareholders, attorneys, advisors, consultants, representatives, partners, joint venturers, independent contractors, wholesalers, resellers, distributors, retailers, predecessors, successors, and assigns of each of them (collectively the "Released Parties"), jointly and severally, of and from any and all liabilities, rights, claims, actions, causes of action, demands, damages, penalties, costs, attorneys' fees, losses, and remedies, whether known or unknown, existing or potential, suspected or unsuspected, liquidated or unliquidated, legal, statutory, or equitable, that result from, arise out of, are based upon, or relate to the Phishing Attack that were or could have been alleged in the Litigation, including, without limitation, any claims, actions, causes of action, demands, damages, penalties, losses, or remedies relating to, based upon, resulting from, or arising out of: (1) the theft, exposure, or disclosure of Settlement Class Members' Personally Identifiable Information; (2) Lincare's maintenance, retention, storage, and destruction of Settlement Class Members' Personally Identifiable Information; (3) Lincare's information security policies, procedures, and practices or training; and (4) Lincare's notice of the Phishing Attack to Settlement Class Members (the "Released Claims").

61.    For the avoidance of doubt, the Released Claims include any claims that a Releasing Party may have under the law of any jurisdiction, including, without limitation, those arising under state or federal law of the United States (including, without limitation, any causes of action under the California Business & Professions Code § 17200 et seq., California Civil Code § 1750 et seq., California Civil Code § 1798.80 et seq., California Civil Code § 56.10 et seq., and any similar statutes or data breach notification statutes in effect in the United States or in any state in the United States); causes of action under the common or civil laws of any state in the United States, including but not limited to: unjust enrichment, negligence, bailment, conversion, negligence per se, breach of contract, breach of implied contract, breach of fiduciary duty, breach of implied covenant of good faith and fair dealing, misrepresentation (whether fraudulent, negligent, or innocent), fraudulent concealment or nondisclosure, invasion of privacy, public disclosure of private facts, and misappropriation of likeness and identity; any causes of action based on trade practices provided for under any state statutes or laws; any causes of action based on privacy rights provided for under the constitutions of the United States or of any state in the United States; and also including, but not limited to, any and all claims in any state or federal court of the United States, for damages, injunctive relief, restitution, disgorgement, declaratory relief, equitable relief, attorneys' fees and expenses, pre-judgment interest, credit or financial account monitoring services, identity theft insurance, the creation of a fund for future damages, statutory penalties, restitution, the appointment of a receiver, and any other form of relief.  The Released Claims do not include any claims arising from or relating to any conduct by Lincare after the Effective Date.

The Releasing Parties understand that the Releasing Parties are releasing Released Claims that the Releasing Parties may not know about.  Such a release is the Releasing Parties' knowing and voluntary intent, even though the Releasing Parties recognize that someday the Releasing Parties might learn that some or all of the facts the Releasing Parties currently believe to be true are not true.  Nevertheless, the Releasing Parties are assuming that risk and the Releasing Parties agree that this Agreement shall remain effective in all respects in any such case.  The Releasing Parties expressly waive all rights the Releasing Parties might have under any law that is intended to protect the Releasing Parties from waiving unknown Released Claims and the Releasing Parties understand the significance of doing so.  California Civil Code Section 1542 provides as follows:

**A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.**

The Releasing Parties have read and understand California Civil Code Section 1542, and expressly acknowledge and agree that any and all rights under Section 1542 of the California Civil Code, other than any rights specifically reserved by law or regulation, are waived.

62.    As of the Effective Date, Lincare will be deemed to have completely released and forever discharged Plaintiffs, and their respective heirs, representatives, and assigns, and present and former attorneys, accountants, experts, consultants, insurers, and agents of each of them, from any and all liabilities, rights, claims, counterclaims, set-offs, actions, causes of action, demands, damages, penalties, costs, attorneys' fees, losses, and remedies, whether known or unknown, existing or potential, suspected or unsuspected, liquidated or unliquidated, legal, statutory, or equitable, that result from, arise out of, are based upon, or relate to the institution, prosecution, and settlement of the Litigation.

63.    The Final Judgment shall contain a finding that, during the course of the Litigation, the Parties and their respective counsel at all times complied with the requirements of Rule 11 of the Federal Rules of Civil Procedure and all other similar laws relating to the institution, prosecution, defense, or settlement of this Litigation.  No Party or Related Person of a Party shall assert any claims for violation of Rule 11 of the Federal Rules of Civil Procedure, or any other similar laws relating to the institution, prosecution, defense, and/ or settlement of the Litigation. The Parties agree that the Released Claims are being settled voluntarily after consultation with an experienced mediator and legal counsel who could assess the strengths and weaknesses of their respective clients' claims or defenses.

64.    Upon entry of the Final Judgment, the Releasing Parties and Lincare shall be enjoined from prosecuting any claim they have released in the preceding paragraphs in any proceeding against any of the Released Parties, Plaintiffs, and their counsel, or based on any actions taken by any of the Released Parties, Plaintiffs, or their counsel that are authorized or required by this Agreement or by the Final Judgment.  It is further agreed that the Settlement may be used as a complete defense to any proceeding subject to this section.

## XII.    ATTORNEYS' FEES AND EXPENSES, AND SERVICE AWARDS

65.    Plaintiffs' Counsel will ask the Court to approve, and Lincare will not oppose, service awards not to exceed $1,000 for each Settlement Class Representative, which are intended to compensate such individuals for their efforts in the Litigation and commitment on behalf of the Settlement Class ("Service Awards").  Any Service Awards approved shall be paid by Lincare separate from and in addition to Lincare's funding of the Settlement Fund, as provided for in Paragraph 34, above, and funds paid by Lincare to provide Credit and Identity Monitoring and Protection services as additional relief to Settlement Class Members, as provided for in Paragraph 35, above.  Any Service Awards approved shall be payable consistent with the timing

for paying the Fee and Expense Award, as described in Paragraph 67.

66.    Lincare agrees that Plaintiffs' Counsel is entitled to a reasonable award of attorneys' fees and expenses ("Fee and Expense Award") in an amount that would fairly compensate Plaintiffs' Counsel for the risks they undertook in commencing and prosecuting the Litigation on a contingency basis and for the benefits obtained for and conferred upon Plaintiffs and the Settlement Class through prosecution of the Litigation and negotiation of the Settlement, subject to Court approval.   Plaintiffs' Counsel agrees that they will not seek attorneys' fees or expenses in amounts that exceed the amounts listed for Plaintiffs' Counsel's attorneys' fees or expenses in the Postcard Notice and Long Form Notice, attached to the Agreement as Exhibits B and C, respectively.   The Parties have been engaged in a good faith effort to reach an agreement as to a reasonable monetary amount for the Fee and Expense Award, and the Parties intend to continue such efforts.   To the extent the Parties do reach an agreement as to a reasonable monetary amount for the Fee and Expense Award, Lincare shall waive its right to object to or oppose a fee and expense request not exceeding the agreed-upon Fee and Expense Award.   To the extent the Parties do not reach an agreement as to a reasonable monetary amount for the Fee and Expense Award, Plaintiffs' Counsel shall reserve its right to file an application with the Court for determination of its reasonable fees and expenses in connection with the Litigation, and Lincare shall reserve its right to oppose the amounts requested in Plaintiffs' Counsel's fee and expense application on any appropriate grounds.   Plaintiffs' Counsel shall make any fee and expense request to the Court no later than thirty (30) days after the Notice Deadline.   The finality or effectiveness of the Settlement will not be dependent on the Parties reaching an agreement as to a reasonable monetary amount for the Fee and Expense Award or the Court approving the fee and expense request, and shall not alter the Effective Date.   The Fee and Expense Award paid to Plaintiffs' Counsel will be paid by Lincare separate from and in addition to all other consideration and relief offered or provided by Lincare as part of the Settlement, including without limitation, Lincare's funding of the Settlement Fund, as provided for in Paragraph 34, above, and funds paid by Lincare to provide Credit and Identity Monitoring and Protection services as additional relief to Settlement Class Members, as provided for in Paragraph 35, above.

67.    To the extent the Parties do reach an agreement as to a reasonable monetary amount for the Fee and Expense Award, the Fee and Expense Award shall be paid into an escrow account controlled by the Settlement Administrator within thirty (30) calendar days of such agreement, and shall be releasable within three (3) business days after entry of an order granting final approval of the Settlement and approving the Fee and Expense Award, notwithstanding the existence of any collateral attacks on the Settlement, including without limitation, any objections or appeals.   In such instance, in the event the Settlement is not approved, or is terminated, cancelled, or fails to become effective for any reason, including, without limitation, in the event the Final Judgment is reversed or vacated or materially modified, amended, or changed, or if the Fee and Expense Award is not approved in full by a reviewing Court, or is reduced on appeal, within ten (10) business days after written notification is sent by Lincare's counsel, Plaintiffs' Counsel shall refund the appropriate portion of the Fee and Expense Award to Lincare and/or its insurer(s) by wire transfer in accordance with the instructions to be provided by Lincare's counsel. To the extent the Parties do reach an agreement as to a reasonable monetary amount for the Fee and Expense Award prior to Postcard Notices being sent pursuant to Section IX, and if sufficient time exists to modify the notices prior to the Notice Deadline, the Parties will update the Postcard Notice and Long Form Notice, attached to the Agreement as Exhibits B and C, without seeking

Court approval, to reflect the agreed upon amounts, with any such costs related to the modification being borne solely by Lincare and/or its insurers.  To the extent the Parties do not reach an agreement as to a reasonable monetary amount for the Fee and Expense Award, Lincare shall pay any such Fee and Expense Award as awarded by the Court into an escrow account controlled by the Settlement Administrator within twenty (20) calendar days following a Court order on the Fee and Expense Award, with such Fee and Expense Award being immediately releasable upon such order awarding the Fee and Expense Award becoming a "final" order.  For the purposes of this paragraph, "final" is defined as to the date upon which such order becomes a final and binding order of the Court and has not been reversed, vacated, or modified in any way and is no longer subject to appellate review, either because of disposition on appeal and conclusion of the appellate process or because of passage, without action, of time for seeking appellate review.  Johnson Fistel, LLP shall timely furnish to Lincare and/or its insurer(s) any required tax information, account information, or necessary forms before any payment is due under this Paragraph and Paragraph 66.  The payment of any Fee and Expense Award awarded shall be paid to Johnson Fistel, LLP, as Class Counsel, who shall allocate the Fee and Expense Award amongst Plaintiffs' Counsel in a manner that it, in good faith, it believes reflects the contributions of such counsel to the prosecution and settlement of the Litigation.  After the Settlement Administrator has distributed the Fee and Expense Award to Class Counsel, Class Counsel shall solely be responsible for allocating the Fee and Expense Award to any such counsel that contributed to the prosecution and settlement of the Litigation.

68.     The finality or effectiveness of the Settlement and this Agreement will not be dependent on the allocation and distribution of the Fee and Expense Award.  Any disputes regarding the allocation and distribution of the Fee and Expense Award will be handled by and between Class Counsel and any such counsel that contributed to the prosecution and settlement of the Litigation.

69.     In the event the Court declines to approve, in whole or in part, the payment of the Fee and Expense Award that Class Counsel requests, the remaining provisions of this Agreement shall remain in full force and effect.  No order of the Court, or modification or reversal or appeal of any order of the Court, concerning the Fee and Expense Award shall constitute grounds for cancellation or termination of this Agreement.

## XIII.   TERMINATION

70.     Lincare shall have the right to, in its sole discretion, terminate the Agreement if a certain percentage of the total number of Settlement Class Members submit valid requests to opt out as separately agreed to by the Parties and submitted to the Court for *in camera* review.  In no event will Class Counsel, Settlement Class Representatives, Lincare's corporate officers, or Lincare's counsel encourage Class Members to opt-out.

71.     This Settlement may be terminated by Settlement Class Representatives or Lincare by serving on counsel for the opposing Parties and filing with the Court a written notice of termination within fourteen (14) days (or such longer time as may be agreed between Class Counsel and Lincare's counsel) after any of the following occurrences:

a.     Class Counsel and Lincare's counsel all agree to termination before

the Effective Date;

b.    The Court rejects, materially modifies, materially amends or changes, or declines to preliminarily or finally approve the Settlement;

c.    An appellate court reverses the Final Judgment, and the Settlement is not reinstated and finally approved without material change by the Court on remand;

d.    The Court or any reviewing appellate court incorporates material terms or provisions into, or deletes or strikes material terms or provisions from, or materially modifies, amends, or changes, the Preliminary Approval Order, the proposed Final Judgment, or the Settlement; or

e.    The Effective Date does not occur.

72.    In the event of a termination as provided in Paragraph 70 or 71, or if the Court disapproves, rejects, or alters any of the Settlement terms contained in this Agreement for any reason, this Agreement shall be considered null and void, and the certification for settlement purposes of the Settlement Class will be vacated; all of the Parties' obligations under the Agreement shall cease to be of any force and effect; and the Parties shall return to the *status quo ante* in the Litigation as of May 13, 2018. In addition, in the event of such a termination, all of the Parties' respective pre-Settlement claims and defenses will be preserved.

## XIV.    <u>MISCELLANEOUS</u>

73.    <u>Publicity</u>.  Plaintiffs' Counsel and/or the Settlement Class Representatives will not issue press releases, disseminate any statements or information via social media, or otherwise initiate public statements regarding the Settlement.  Provided, however, Plaintiffs' Counsel may disseminate information regarding the Settlement and the Litigation for the purpose of inclusion in Plaintiffs' Counsel's respective firm résumés (as submitted from time to time to courts during the course of litigation), may discuss the Settlement and the Litigation in connection with other litigation in which Plaintiffs' Counsel is involved or may become involved, and may discuss the Settlement and Litigation in their respective firm newsletters which are transmitted periodically to firm clients and posted on Plaintiffs' Counsel's respective firm websites.  The Parties will not make statements of any kind to any third-party regarding the Settlement prior to the filing of a motion for preliminary approval with the Court, with the exception of the Settlement Administrator.  The Parties may make public statements to the Court as necessary to obtain preliminary or final approval of the Settlement, and Class Counsel will not be prohibited from communicating with any person in the Settlement Class regarding the Litigation or the Settlement. In all communications, the Parties must comply with all confidentiality agreements in the Litigation and not disclose information that is not a part of the public record.

74.    <u>Destruction of Confidential Documents</u>.  Consistent with all confidentiality agreements in the Litigation, the originals and all copies of all confidential documents and/or information subject to all confidentiality agreements ("Confidential Information") shall be

returned to the producing party within 30 days after the Effective Date. The parties may agree in writing that certain Confidential Information may be destroyed in lieu of being returned. Nothing in the Agreement shall require attorney work product or pleading files to be returned or destroyed, provided that any such retained materials remain subject to the terms of the confidentiality agreement.

75.     Change of Time Periods.  The time periods and/or dates described in this Agreement with respect to the giving of notices and hearings are subject to approval and change by the Court, or by written agreement of Class Counsel and Lincare's counsel and as approved by the Court, without notice to Settlement Class Members. The Parties reserve the right, by agreement and subject to the Court's approval, to grant any reasonable extension of time that might be needed to carry out any of the provisions of this Agreement.

76.     Singular and Plurals.  As used in this Agreement, all references to the plural shall also mean the singular, and to the singular shall also mean the plural, whenever the context so indicates.

77.     Binding Effect.  This Agreement shall be binding upon, and inure to the benefit of, the successors and assigns of the Releasing Parties and the Released Parties.

78.     Cooperation of Parties.  The Parties to this Agreement agree to cooperate in good faith to prepare and execute all documents, to seek Court approval, defend Court approval, and to do all things reasonably necessary to complete and effectuate the Settlement described in this Agreement.

79.     Obligation to Meet and Confer.  Before filing any motion in the Court raising a dispute arising out of or related to this Agreement, the Parties shall consult with each other and certify to the Court that they have consulted in good faith.

80.     Integration.  This Agreement (along with any Exhibits attached hereto) constitutes a single, integrated written contract expressing the entire agreement of the Parties relative to the subject matter hereof. With the exception of the agreement referenced in Paragraph 70, no covenants, agreements, representations, or warranties of any kind whatsoever have been made by any Party hereto, except as provided for herein (and in any Exhibits attached hereto).

81.     No Conflict Intended.  Any inconsistency between the headings used in this Agreement and the text of the paragraphs of this Agreement shall be resolved in favor of the text.

82.     Governing Law.  The Agreement shall be construed in accordance with, and be governed by, the laws of the State of Florida, without regard to the principles thereof regarding choice of law.

83.     Counterparts.  This Agreement may be executed in any number of counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument, even though all signatories do not sign the same counterparts. Original signatures are not required. Any signature submitted by facsimile or through email of an Adobe PDF shall be deemed an original.

84.   <u>Jurisdiction</u>.   The Court shall retain jurisdiction over the implementation, enforcement, and performance of this Agreement, and shall have exclusive jurisdiction over any suit, action, proceeding, or dispute arising out of or relating to this Agreement that cannot be resolved by negotiation and agreement by counsel for the Parties.   The Court shall retain jurisdiction with respect to the administration, consummation, and enforcement of the Agreement and shall retain jurisdiction for the purpose of enforcing all terms of the Agreement.   The Court shall also retain jurisdiction over all questions and/or disputes related to the Notice Program and the Settlement Administrator.   As part of its agreement to render services in connection with this Settlement, the Settlement Administrator shall consent to the jurisdiction of the Court for this purpose.

85.   <u>Notices</u>.   All notices to Class Counsel provided for herein, shall be sent by overnight mail to:

**JOHNSON FISTEL, LLP**
Michael I. Fistel, Jr.
David A. Weisz
Murray House
40 Powder Springs Street
Marietta, GA 30064
Telephone: (770) 200-3104
Facsimile: (770) 200-3101
Email:   MichaelF@johnsonfistel.com
           DavidW@johnsonfistel.com

All notices to Lincare provided for herein, shall be sent by overnight mail to:

**PHELPS DUNBAR LLP**
Michael S. Hooker
Jason A. Pill
100 South Ashley Drive, Suite 1900
Tampa, Florida 33602
Telephone: (813) 472-7550
Facsimile: (813) 472-7570
Email: Michael.Hooker@phelps.com
           Jason.Pill@phelps.com

The notice recipients and addresses designated above may be changed by written notice. Upon the request of any of the Parties, the Parties agree to promptly provide each other with copies of objections, requests for exclusion, or other filings received as a result of the Notice Program.

86.   <u>Authority</u>.   Any person executing this Agreement in a representative capacity represents and warrants that he or she is fully authorized to do so and to bind the Party on whose behalf he or she signs this Agreement to all of the terms and provisions of this Agreement.

87.   <u>No Construction Against Drafter</u>.  This Agreement shall be deemed to have been drafted by the Parties, and any rule that a document shall be interpreted against the drafter shall not apply to this Agreement.

IN WITNESS WHEREOF, the Parties have caused the Agreement to be executed by their duly authorized attorneys.

Lincare Holdings Inc.

Counsel for Lincare Holdings Inc.

Sheila Kalteux, Senior Corporation Counsel
Lincare
19387 U.S. Highway 19 N.
Clearwater, FL 33764

Michael S. Hooker
PHELPS DUNBAR LLP
100 South Ashley Drive, Suite 1900
Tampa, Florida 33602

Settlement Class Counsel on behalf of
Plaintiffs and the putative Class

Michael I. Fistel, Jr.
JOHNSON FISTEL, LLP
Murray House
40 Powder Springs Street
Marietta, GA 30064

– 27 –

## CERTIFICATE OF SERVICE

The undersigned counsel certifies that on this day, he electronically filed the above and foregoing with the Clerk of Court using the CM/ECF system, which will automatically send email notification of such filing to all attorneys of record.

**JOHNSON FISTEL, LLP**

*/s/  Michael I Fistel, Jr.*
MICHAEL I. FISTEL, JR. (admitted *pro hac vice*)

Murray House
40 Powder Springs Street
Marietta, GA  30064
Telephone: (770) 200-3104
Facsimile: (770) 200-3101
Email: MichaelF@johnsonfistel.com