**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

| | |
|---|---|
| ANDREW GIANCOLA, RAYMOND T. SCOTT, and PATRICIA SMITH, Individually and On Behalf of All Others Similarly Situated, <br><br>        Plaintiffs, <br><br>      v. <br><br> LINCARE HOLDINGS INC., <br><br>        Defendant. | Case No.: 8:17-cv-02427-T-33AEP |

**PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND EXPENSES, AND SERVICE AWARDS TO THE SETTLEMENT CLASS REPRESENTATIVES, AND <u>INCORPORATED MEMORANDUM OF LAW</u>**

## <u>TABLE OF CONTENTS</u>

**Page(s)**

I.    INTRODUCTION ........................................................................................... 1

II.   HISTORY AND BACKGROUND OF THE LITIGATION AND SETTLEMENT .......... 3

III.  ARGUMENT ................................................................................................. 4

    A.  Rule 23 Authorizes Agreements on Attorneys' Fees and Expenses in Class Action
Settlements ................................................................................................. 4

    B.  The Fee and Expense Award is Fair and Reasonable under the Common Fund Doctrine .. 7

        1.  The Litigation Was Novel and Difficult, Which Rendered It Undesirable ................... 10

        2.  Class Counsel Assumed Significant Risk and Financial Burden Due to the Contingent
Nature of the Fee, and Were Precluded From Other Employment Due to Their Involvement
In the Litigation ........................................................................................... 11

    C.  The Results Achieved by Class Counsel Provide Substantial Benefits to Class Members 13

    D.  The Litigation Required Significant Legal Acumen and Skill .......................................... 15

    E.  The Requested Fee is Customary For This Type of Case ................................................. 17

    F.  A Lodestar Analysis Supports the Reasonableness of the Fee Requested ........................ 18

IV.   THE SETTLEMENT CLASS REPRESENTATIVES ARE ENTITLED TO SERVICE
AWARDS ........................................................................................................... 19

V.    CONCLUSION ................................................................................................... 21

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

<u>Cases</u>

*Allapattah Servs. v. Exxon Corp.*,
  454 F. Supp. 2d 1185 (S.D. Fla. 2006) ..................................................................... 3

*Alyeska Pipeline Service Co. v. Wilderness Soc'y*,
  421 U.S. 24 (1975) ...................................................................................................... 4

*Behrens v. Wometco Enters., Inc.*,
  118 F.R.D. 534 (S.D. Fla. 1988) ................................................................... 11, 12, 15

*Blum v. Stenson*,
  465 U.S. 886 (1984) .................................................................................................... 8

*Boeing Co. v. Van Gemert*,
  444 U.S. 472 (1980) .................................................................................................... 8

*Burrows v. Purchasing Power, LLC*,
  No. 12-cv-22800, 2013 U.S. Dist. LEXIS 189397 (S.D. Fla. Oct. 4, 2013) ............... 10, 16, 20

*Camden I Condominium Ass'n v. Dunkle*,
  946 F.2d 768 (11th Cir. 1991) ........................................................................... passim

*Camp v. City of Pelham*,
  No. 10-cv-1270, 2015 U.S. Dist. LEXIS 182565 (N.D. Ala. Dec. 16, 2015) ......................... 11

*Camp v. Progressive Corp.*,
  No. 01-cv-2680, 2004 U.S. Dist. LEXIS 19172 (E.D. La. Sep. 23, 2004) ............................ 21

*Columbus Drywall & Insulation v. Masco Corp.*,
  No. 04-cv-3066, 2012 U.S. Dist. LEXIS 196030 (N.D. Ga. Oct. 26, 2012) ......................... 19

*David v. Am. Suzuki Motor Corp.*,
  No. 08-cv-22278, 2010 U.S. Dist. LEXIS 146073 (S.D. Fla. Apr. 15, 2010) ........................ 16

*Dear v. Q Club Hotel, LLC*,
  No. 15-cv-60474, 2018 U.S. Dist. LEXIS 42787 (S.D. Fla. Mar. 14, 2018)........................... 19

*Family Med. Pharm., LLC v. Trxade Grp., Inc.*,
  No. 15-cv-590, 2017 U.S. Dist. LEXIS 38637 (S.D. Ala. Mar. 17, 2017)................................ 2

*Faught v. Am. Home Shield Corp.*,
  668 F.3d 1233 (11th Cir. 2011) ............................................................................ 2, 14

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998) .................................................................................... 7

*Hapka v. Carecentrix, Inc.*,
No. 16-cv-2372, 2018 U.S. Dist. LEXIS 68186 (D. Kan. Feb. 15, 2018) ........................ 10, 11

*In re Cmty. Health Sys.*,
No. 15-cv-222, 2016 U.S. Dist. LEXIS 123030 (N.D. Ala. Sep. 12, 2016) ............................ 11

*In re Continental Ill. Sec. Litig.*,
962 F.2d 566 (7th Cir. 1992) ............................................................................................... 5

*In re First Capital Holdings Corp. Fin. Prods. Sec. Litig.*,
MDL No. 901, 1992 U.S. Dist. LEXIS 14337 (C.D. Cal. Jun. 10, 1992) ................................. 5

*In re Friedman's, Inc.*,
No. 03-cv-3475, 2009 U.S. Dist. LEXIS 43758 (N.D. Ga. May 22, 2009) ............................. 11

*In re Target Corp. Customer Data Sec. Breach Litig.*,
892 F.3d 968 (8th Cir. 2018) ............................................................................................... 9

*Ingram v. Coca-Cola Co.*,
200 F.R.D. 685 (N.D. Ga. 2001) ........................................................................................ 19

*Johnson v. Ga. Highway Express, Inc.*,
488 F.2d 714 (5th Cir. 1974) ....................................................................................... 4, 17

*Katz v. China Century Dragon Media, Inc.*,
No. 11-cv-2769, 2013 U.S. Dist. LEXIS 189987 (C.D. Cal. Oct. 10, 2013) .......................... 19

*Lipuma v. American Express Co.*,
406 F. Supp. 2d 1298 (S.D. Fla. 2005) .............................................................................. 15

*Local 56, United Food & Commer. Workers Union v. Campbell Soup Co.*,
954 F. Supp. 1000 (D.N.J. 1997) ....................................................................................... 5

*Mashburn v. Nat'l Healthcare, Inc.*,
684 F. Supp. 679 (M.D. Ala. 1988) ................................................................................... 19

*McBean v. City of New York*,
233 F.R.D. 377 (S.D.N.Y. 2006) ......................................................................................... 6

*McClellan v. Chase Home Fin. LLC*,
No. 12-cv-1331, 2015 U.S. Dist. LEXIS 118005 (C.D. Cal. Aug. 31, 2015) ........................... 7

*Montoya v. PNC Bank, N.A.*,
No. 14-200474-CIV, 2016 U.S. Dist. LEXIS 50315 (S.D. Fla. Apr. 13, 2016) ....................... 9

*Parker v. Healthcare Inv. Grp., Inc.*,
272 F. Supp. 3d 1303 (N.D. Ala. 2017) ............................................................................. 19

*Pinto v. Princess Cruise Lines Ltd.*,
513 F. Supp. 2d 1334 (S.D. Fla. 2007) .............................................................................. 19

*Ponca Tribe of Indians of Okla. v. Cont'l Carbon Co.*,
  No. 05-cv-445, 2009 U.S. Dist. LEXIS 82522 (W.D. Okla. Jul. 31, 2009) ........................... 20

*Shipes v. Trinity Indus.*,
  987 F.2d 311 (5th Cir. 1993) ............................................................................................ 17

*Stapleton v. Tampa Bay Surgery Ctr., Inc.*,
  No. 17-cv-1540-T-30AEP, 2017 U.S. Dist. LEXIS 139661 (M.D. Fla. Aug. 30, 2017) ... 10, 11

*Strube v. Am. Equity Inv. Life Ins. Co.*,
  No. 6:01-cv-1236-Orl-19DAB, 2006 U.S. Dist. LEXIS 28582 (M.D. Fla. May 5, 2006)......... 8

*Tam Su v. Elec. Arts, Inc.*,
  No. 05-cv-131-Orl-28JGG, 2006 U.S. Dist. LEXIS 98894 (M.D. Fla. Aug. 29, 2006)............. 3

*Thorpe v. Walter Inv. Mgmt. Corp.*,
  No. 14-cv-20880, 2016 U.S. Dist. LEXIS 144133 (S.D. Fla. Oct. 14, 2016) ......................... 16

*Torres v. Bank of America (In re Checking Account)*,
  830 F.Supp.2d 1330 (S.D. Fla. 2011) ............................................................................ passim

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
  396 F.3d 96 (2d Cir. 2005).................................................................................................... 6

*Warner v. Complete Cash Holdings, LLC*,
  No. 10-cv-21, 2011 U.S. Dist. LEXIS 162609 (N.D. Ga. Mar. 23, 2011) ............................. 19

*Whitehead v. Advance Stores Co.*,
  No. 16-cv-250-Oc-37PRL, 2017 U.S. Dist. LEXIS 79291 (M.D. Fla. May 23, 2017)........... 16

*Wilson v. EverBank*,
  No. 14-cv-22264, 2016 U.S. Dist. LEXIS 15751 (S.D. Fla. Feb. 3, 2016) ................... 8, 13, 18

## <u>Rules</u>

Fed. R. Civ. Procedure Rule 23(h)................................................................................................ 4

Pursuant to Federal Rule of Civil Procedure 23(h), Plaintiffs and Settlement Class Representatives Andrew Giancola, Raymond T. Scott, and Patricia Smith ("Plaintiffs" or "Settlement Class Representatives") respectfully move this Court for an Order granting to each of them $1,000 in Service Awards, and granting a Fee and Expense Award of $475,000 to Class Counsel. Defendant Lincare Holdings Inc. ("Defendant" or "Lincare") has agreed to not oppose Plaintiffs' request for a Fee and Expense Award and Service Awards, as set forth in the Parties' Settlement Agreement and Release (Dkt. No. 40), and Supplemental Agreement Regarding Class Counsel's Request for Attorneys' Fees and Expenses ("Supplemental Fee Agreement" or "Supp. Agmt."), submitted as Exhibit 3 to the concurrently-filed Declaration of Michael I. Fistel, Jr. in Support of this Motion, as well as Settlement Class Representatives' Unopposed Motion for Final Approval of Class Action Settlement.

## I.       INTRODUCTION[1]

Following months of hard-fought litigation and settlement negotiations in a class action involving complex data breach and privacy law issues, Class Counsel have achieved an exemplary Settlement that provides both monetary and injunctive relief to Class Members impacted by the Phishing Attack. Under the Settlement, Class Members may recover meaningful cash compensation—in the aggregate, a total of $875,000 for Out-of-Pocket Loss Claims, or for Eligible Incident Claims. Also, under the Settlement, all Class Members are entitled to receive 24 months of premium Credit and Identity Monitoring and Protection services through TransUnion—a robust data protection package with an estimated aggregate value of more than $972,900. Additionally, the Settlement provides for injunctive relief in the form of Enhanced Data Security Measures—

---

[1] Unless otherwise noted, all capitalized terms used herein have the meanings ascribed to them in the Settlement Agreement, and/or the Supplemental Fee Agreement. In addition, all emphasis is added and all citations are omitted, unless otherwise noted.

*i.e.*, specific enhancements and improvements to Lincare's data security practices, which will further benefit the Class Members by safeguarding their PII against future data and privacy breaches. Finally, the Settlement requires Lincare to pay the costs and expenses associated with the Settlement—separately and in addition to the foregoing class benefits, including the Fee and Expense Award, the Service Awards, and the costs of Notice and Claims Administration.

The Settlement negotiated by Class Counsel is an excellent result, particularly when viewed in light of the considerable risks posed by continued litigation and the complex and novel legal issues in dispute. As discussed below, the Settlement is particularly noteworthy in that it will provide valuable relief to the Class that rivals or exceeds the average "per class member" recovery of other settlements in similar data breach class actions.

As fair compensation for their success in achieving the foregoing Settlement benefits for Plaintiffs and the Class, as well as for the significant risks they undertook in prosecuting the Litigation on a contingency basis, Class Counsel respectfully request a Fee and Expense Award of $475,000. The requested Fee and Expense Award represents approximately 25% of the combined value of ***part*** of the class-wide relief—*i.e.*, ***solely*** the Settlement Fund and the Credit and Identity Monitoring and Protection services. This requested fee represents a "benchmark" percentage recovery and as such, is reasonable on its face. *See Camden I Condominium Ass'n v. Dunkle* ("*Camden*"), 946 F.2d 768, 770-71 (11th. Cir. 1991). Indeed, it is "well-settled law from this court that 25% is generally recognized as a reasonable fee award." *Faught v. Am. Home Shield Corp.*, 668 F.3d 1233, 1243 (11th Cir. 2011); *see also Family Med. Pharm., LLC v. Trxade Grp., Inc.*, No. 15-cv-590, 2017 U.S. Dist. LEXIS 38637, at *36 (S.D. Ala. Mar. 17, 2017) ("an attorney's fee of 20% to 30% of a common fund is a generally found to be a reasonable and fair attorney's fee in this circuit").

Crucially, the Settlement mandates that the Fee and Expense Award will be paid by Lincare *"separate from and in addition to"* the Settlement Fund, or any other benefits provided under the Settlement.  (Dkt. No. 40 at ¶66; Supp. Agmt. at ¶2)  Thus, the payment of any Fee and Expense Award to Class Counsel will not minimize or reduce, in any way, the Settlement relief to the Class.

The fairness and reasonableness of the requested fee is further confirmed when cross-checked against Class Counsel's lodestar amount, essentially amounting to a *negative multiplier*. *See Tam Su v. Elec. Arts, Inc.*, No. 05-cv-131-Orl-28JGG, 2006 U.S. Dist. LEXIS 98894, at *14-18 (M.D. Fla. Aug. 29, 2006) (illustrating paradigmatic example of reasonable fee where (1) fee resulted from negotiations of parties, (2) fee request nevertheless made under *negative* lodestar multiplier, and (3) defendant did not contest the fee request).  The Fee and Expense Award is therefore reasonable when examined under Circuit standards, and should be approved.

The Court also should approve Service Awards of $1,000 to each of the three Settlement Class Representatives, as provided under the Settlement.  (Dkt. No. 40 at ¶65)  Like the Fee and Expense Award, the Service Awards will be paid by Lincare separately from any Settlement relief. The modest Service Awards, which are intended to compensate the Settlement Class Representatives for their time, effort, and commitment to pursuing the Litigation on behalf of the Class, are reasonable and authorized in this Circuit.  *See Allapattah Servs. v. Exxon Corp.*, 454 F. Supp. 2d 1185, 1218 (S.D. Fla. 2006) ("there is ample precedent for awarding incentive compensation to class representatives at the conclusion of a successful class action").

## II.    HISTORY AND BACKGROUND OF THE LITIGATION AND SETTLEMENT

To avoid repetition, Plaintiffs respectfully refer the Court to the accompanying Declaration of Michael I. Fistel, Jr. Plaintiffs' Unopposed Motion for Final Approval of Class Action Settlement ("Fistel Declaration" or "Fistel Dec.") filed concurrently herewith, for a detailed

discussion of the factual background and procedural history of the Litigation, the efforts of and significant risks undertaken by Plaintiffs and Class Counsel in pursuing the Litigation, and the protracted, arm's-length negotiations leading to the Settlement, which included an in-person mediation with Steven R. Jaffe, Esq.

## III.   ARGUMENT

### A.   Rule 23 Authorizes Agreements on Attorneys' Fees and Expenses in Class Action Settlements

Under the traditional "American Rule," parties to litigation are generally responsible for bearing their own costs. *Camden*, 946 F.2d at 770–71 (citing *Alyeska Pipeline Service Co. v. Wilderness Soc'y*, 421 U.S. 24 (1975)). However, a well-established exception to the American Rule occurs in the class action context where a settlement has been reached on behalf of the class, and the parties have agreed to the payment of attorneys' fees to plaintiff's counsel in recognition of their work and effort in pursuing the litigation. *Id.* Rule 23(h) explicitly incorporates and recognizes this principle: "In a certified class action, the court may award reasonable attorney's fees and nontaxable costs authorized that are authorized by law or ***by the parties agreement***."

Ideally then, parties in class action cases should endeavor to resolve the issue of attorneys' fees by agreement whenever possible. As acknowledged by the United States Supreme Court: "A request for attorney's fees should not result in a second major litigation. Ideally, of course, litigants will settle the amount of a fee." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983); *see also Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 720 (5th Cir. 1974) ("we encourage counsel on both sides to utilize their best efforts to understandingly, sympathetically, and professionally arrive at a settlement as to attorney's fees"). Courts are therefore authorized to award reasonable attorneys' fees and expenses to plaintiffs' counsel where the parties have agreed to the amount, particularly where the requested fee is paid separately from the benefits conferred to the class under the

– 4 –

settlement.  *See, e.g.*, *Local 56, United Food & Commer. Workers Union v. Campbell Soup Co.*, 954 F. Supp. 1000, 1005 (D.N.J. 1997) (granting class counsel the maximum amount of fees agreed to by defendant under a settlement agreement, where "class members . . . retain all that the settlement provides [and] do not lose any of the negotiated benefits on account of an attorneys' fee and costs award that equals the 'cap' on such an award set forth in the settlement").

Additionally, fee awards that have been negotiated at arm's-length and in a non-collusive manner should be viewed with particular favor because such fees represent the "market price" for attorney services, resulting from the parties' opposing interests and informed by the parties' knowledge of the work done, results achieved, and their views on what the court may award if the matter were fully litigated.  As explained by Judge Posner of the Seventh Circuit:

> '[I]t is not the function of judges in fee litigation to determine the equivalent of the medieval just price.  It is to determine what the lawyer would receive if he were selling his services in the market rather than being paid by court order. . . . Markets know market values better than judges do. . . . The object in awarding a reasonable attorney's fee… is to give the lawyer what he would have gotten in the way of a fee in an arms' length negotiation, had one been feasible.

*In re Continental Ill. Sec. Litig.*, 962 F.2d 566, 568–72 (7th Cir. 1992); *see also In re First Capital Holdings Corp. Fin. Prods. Sec. Litig.*, MDL No. 901, 1992 U.S. Dist. LEXIS 14337, at *13 (C.D. Cal. Jun. 10, 1992) (awarding negotiated fee of $8 million, explaining: "The fee was negotiated at arm's length with sophisticated defendants by the attorneys who were intimately familiar with the case, the risks, the amount and value of their time, and the nature of the result obtained for the class.  Where there is such arm's length negotiation and there is no evidence of self-dealing or disabling conflict of interest, the Court is reluctant to interpose its judgment as to the amount of attorneys' fees in the place of the amount negotiated by the adversarial parties in the litigation.").

Furthermore, courts have expressed a preference for fee awards that are paid ***separately and apart*** from any common fund or other settlement relief provided to the class:

– 5 –

> If money paid to the attorneys comes from a common fund, and is therefore money taken from the class, then the Court must carefully review the award to protect the interests of the absent class members.  If, however, money paid to attorneys is entirely independent of money awarded to the class, the Court's fiduciary role in overseeing the award is greatly reduced, because there is no conflict of interest between attorneys and class members.

*McBean v. City of New York*, 233 F.R.D. 377, 392 (S.D.N.Y. 2006) (concluding parties' agreement as to attorneys' fees was reasonable because it was the product of arm's length negotiations) (citing *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 123-24 (2d Cir. 2005)).

These overarching principles apply here.  Following agreement on the material terms of the Settlement, the Parties engaged in vigorous, arm's-length negotiations on the amount of the Fee and Expense Award, overseen by a well-respected and experienced mediator, Steven R. Jaffe, Esq.  (Declaration of Steven R. Jaffe ("Jaffe Dec.") at ¶¶14–15 attached as Exhibit 2 to the Fistel Dec.)  During the protracted, often contentious fee negotiations, counsel for Lincare fought hard to minimize the amount of attorneys' fees that Lincare would ultimately have to pay to Class Counsel.  Meanwhile, Class Counsel fought hard for the maximum amount that reflected the significant risks they undertook in pursuing the Litigation on a contingency basis and the substantial attorney time and resources devoted to the Litigation.  (Fistel Dec. at ¶87; *see also* Jaffe Dec. at ¶¶10–11) These vastly differing positions required substantial negotiation and compromise by both Parties over the course of several weeks before they were able to finally agree to a Fee and Expense Award in the amount of $475,000.  Even after the amount of the fee was resolved, the Parties engaged in further heated discussions to resolve the terms of the Supplemental Fee Agreement.  (Fistel Dec. at ¶87; *see also* Jaffe Dec. at ¶¶14–15)  And critically, the Parties agreed that the Fee and Expense Award would be paid by Lincare separate from and in addition to all other benefits provided to the Class under the Settlement.  (Dkt. No. 40 at ¶66; Supp. Agmt. at ¶2)

The requested Fee and Expense Award was negotiated at arm's-length by sophisticated and experienced counsel who considered the merits and weaknesses of the case, the significant risks of ongoing litigation, the results obtained for the Class under the Settlement, and the customary fees awarded by courts in similar types of cases. (Jaffe Dec. at ¶¶11, 14, 17; *see also* Fistel Dec. at ¶86) Furthermore, attorneys' fees were not even negotiated or discussed until after agreement was reached between the Parties on all other material terms of the settlement. (Jaffe Dec. at ¶¶12-14) *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998) (emphasizing that "class counsel and [defendant] did not negotiate or discuss attorneys' fees until after the final settlement agreement was presented to the court" in affirming $5.2 million fee award). And, because Defendant has agreed to pay the Fee and Expense Award separate from the Settlement benefits to the Class, any reduction of the fee amount would not confer any greater benefit upon the Class, but would only benefit Defendant, which itself has agreed not to oppose the amount requested here. Thus, in analyzing the reasonableness of Class Counsel's Fee and Expense Award, the Court should give due deference to the Parties' agreement to pay Class Counsel a Fee and Expense Award of $475,000, which again is separate and apart from any benefits conferred to the Class under the Settlement. (Dkt. No. 40 at ¶66) *See McClellan v. Chase Home Fin. LLC*, No. 12-cv-1331, 2015 U.S. Dist. LEXIS 118005, at *20 (C.D. Cal. Aug. 31, 2015) (payment of class counsel's fees separate from settlement funds, and without reducing class members' recovery under the settlement, "both weigh in favor of approval of the attorneys' fees").

### B.   The Fee and Expense Award is Fair and Reasonable under the Common Fund Doctrine

In this case, Class Counsel achieved an excellent Settlement that confers a robust set of monetary and nonmonetary benefits to the Class. (*See* Dkt. No. 40 at ¶¶33–36, 48, 56, 65–66; Jaffe Dec. at ¶17; Fistel Dec. at ¶¶71-80, 90) The Court may therefore examine the reasonableness

of the requested Fee and Expense Award under well-accepted "common benefit" principles. *See Camden*, 946 F.2d at 771 (applying common benefit analysis "when litigation indirectly confers substantial monetary or nonmonetary benefits on members of an ascertainable class"); *see also Wilson v. EverBank*, No. 14-cv-22264, 2016 U.S. Dist. LEXIS 15751, at *44 (S.D. Fla. Feb. 3, 2016) (holding that plaintiffs' counsel's fee award is based on consideration of monetary benefits, as well as "any non-monetary benefits conferred upon the class by the settlement"). The common fund doctrine "rests on the perception that persons who obtain the benefit of a lawsuit without contributing to its cost are unjustly enriched at the successful litigant's expense." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980).

"[U]nder the 'common fund doctrine,' . . . a reasonable fee is based on a percentage of the fund bestowed on the class." *Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984); *see also Camden*, 946 F.2d at 774 ("in this circuit, attorneys' fees awarded from a common fund shall be based upon a reasonable percentage of the fund established for the benefit of the class"). In this Circuit, fee requests within the range of 20% to 30% of the fund are commonly granted—with 25% as the established "benchmark" percentage fee award. *See id.* at 774-775. In certain class action cases, an "uppermost limit of recovery" of 50% of the fund may even be allowed. *Strube v. Am. Equity Inv. Life Ins. Co.*, No. 6:01-cv-1236-Orl-19DAB, 2006 U.S. Dist. LEXIS 28582, at *4 (M.D. Fla. May 5, 2006) (*citing Camden*, 946 F.2d at 774–75).

Class Counsel's request for a Fee and Expense Award of $475,000 falls squarely in line with the benchmark percentage amount typically authorized in this Circuit, and therefore, is fair and reasonable on its face. Here, the Settlement achieved by Class Counsel provides direct and valuable settlement relief—Class Members may seek cash payments totaling $875,000, in the aggregate, for claims submitted under the Settlement Fund, and will also receive an enhanced

Credit and Identity Monitoring and Protection benefits package, with a total estimated value of over $972,900.[2]  When taken as a percentage-of-recovery, the requested Fee and Expense Award is approximately 25% of the aggregate value of those two Settlement benefits alone.  (Fistel Dec. at ¶103)  Notably, the value of the foregoing common benefits does not even include the Enhanced Data Security Measures mandated as injunctive relief under the Settlement, which undoubtedly provides added value to the Class.  *See Montoya v. PNC Bank, N.A.*, No. 14-200474-CIV, 2016 U.S. Dist. LEXIS 50315, at *48 (S.D. Fla. Apr. 13, 2016) ("[C]ourts rightly consider the value of injunctive and monetary relief in assessing whether a class action settlement provides sufficient relief to the class."); *see also In re Target Corp. Customer Data Sec. Breach Litig.*, 892 F.3d 968, at n.6 (8th Cir. 2018) (noting "the injunctive relief offered under the settlement has value to all class members," in affirming final approval of data breach settlement).

As discussed below, the reasonableness of Class Counsel's benchmark fee request is further confirmed when examined under the pertinent factors articulated by the Eleventh Circuit in *Camden*.[3]  Importantly, the *Camden* factors are "merely guidelines," and the Eleventh Circuit has left it to the district court's discretion to apply those facts in view of the circumstances of the

---

[2] The Credit and Identity Monitoring and Protection services available to Class Members as part of the Settlement, TransUnion "MyTrueIdentity" package, carries a retail value of approximately $19.95 per person, per month, as per TransUnion's publicly-marketed pricing.  (Fistel Dec. at ¶32)

[3] As the Eleventh Circuit explained in *Camden*, the following 12 factors can be used to determine whether court-awarded attorneys' fees are reasonable: "(1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and the length of the professional relationship with the client; (12) awards in similar cases." 946 F.2d at 772 n.3.

particular case.  *See Torres v. Bank of America (In re Checking Account)*, 830 F.Supp.2d 1330, 1359 (S.D. Fla. 2011).

## 1.     The Litigation Was Novel and Difficult, Which Rendered It Undesirable

This case involved complex data breach and privacy issues, which were "novel" and notoriously difficult to litigate.  For example, in *Burrows v. Purchasing Power, LLC*, No. 12-cv-22800, 2013 U.S. Dist. LEXIS 189397 (S.D. Fla. Oct. 4, 2013), Judge Ungaro-Benages of the Southern District of Florida granted final approval of a data breach class action settlement and awarded the full amount of attorneys' fees to plaintiffs' counsel, noting that "this case was novel" and "required significant legal effort."  *Id.* at *23.  Similarly, in *Hapka v. Carecentrix, Inc.*, No. 16-cv-2372, 2018 U.S. Dist. LEXIS 68186, at *6, 9 (D. Kan. Feb. 15, 2018), Judge Gale of the District of Kansas ruled that the attorneys' fee request in a similar data breach class settlement was reasonable, noting "the novelty of the questions that would play a key role in this case" and that the case "presented novel issues . . . and success was far from certain."

Notably, courts have recognized that litigants in data breach class actions face specific challenges and difficulties with respect to issues of standing, causation, and damages.  Indeed, Judge Moody in this District addressed those challenges in *Stapleton v. Tampa Bay Surgery Ctr., Inc.*, No. 17-cv-1540-T-30AEP, 2017 U.S. Dist. LEXIS 139661 (M.D. Fla. Aug. 30, 2017):

> The issue of whether a data breach on its own is an "injury in fact" is novel for this Court and has not been addressed by the Eleventh Circuit.  Other circuit courts have reached conflicting conclusions, with the Sixth, Seventh, Ninth, and D.C. Circuits holding data breach victims have standing because they are at a substantial risk of injury, and the First, Second, Third, and Fourth Circuits holding data breach victims lacked standing.  So there is no clear consensus as to how the issue should be resolved.

*Id.* at *4–5 (collecting cases); *see also In re Cmty. Health Sys.*, No. 15-cv-222, 2016 U.S. Dist. LEXIS 123030, at *32 (N.D. Ala. Sep. 12, 2016) (noting "uncertainty" in that "a data breach case,

. . . [i]s addressing 'a novel theory of damages for which supporting case law is scarce' and 'not yet settled'"); *Hapka*, 2018 U.S. Dist. LEXIS 68186, at *6 (noting that the issue of class certification for a "class of data breach victims" was "an issue of first impression").

Defendant raised those very issues (*i.e.*, standing, causation, and damages) in its dismissal motions, and those issues certainly would have been challenged at the class certification stage. (*See* Dkt. Nos. 25, 36)   There is no question, then, that this Litigation involved novel and unresolved legal issues, which presented significant risks and challenges to Class Counsel and made the outcome of the case entirely uncertain.  Class Counsel's willingness to take on this novel and difficult case justifies the grant of the Fee and Expense Award.

> **2.     Class Counsel Assumed Significant Risk and Financial Burden Due to the Contingent Nature of the Fee, and Were Precluded From Other Employment Due to Their Involvement In the Litigation**

Class Counsel took on this Litigation entirely on a contingency fee basis.  (Dkt. No. 40 at ¶66; Supp. Agmt. at ¶2; Fistel Dec. at ¶84)   In undertaking the prosecution of this risky and challenging class action case on a contingent basis, Class Counsel assumed the significant risk of nonpayment or underpayment.  *See In re Checking Account*, 830 F.Supp.2d at 1364.  As courts within the Eleventh Circuit have recognized, "[a] contingency fee arrangement often justifies an increase in the award of attorneys' fees." *Id.* (citing *Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 548 (S.D. Fla. 1988), *aff'd*, 899 F.2d 21 (11th Cir. 1990)); *see also Camp v. City of Pelham*, No. 10-cv-1270, 2015 U.S. Dist. LEXIS 182565, at *12 (N.D. Ala. Dec. 16, 2015); *In re Friedman's, Inc.*, No. 03-cv-3475, 2009 U.S. Dist. LEXIS 43758, at *16 (N.D. Ga. May 22, 2009). "This rule helps assure that the contingency fee arrangement endures.  If this 'bonus' methodology did not exist, very few lawyers could take on the representation of a class client given the investment of substantial time, effort, and money, especially in light of the risks of recovering nothing." *Behrens*, 118 F.R.D. at 548.

The policy supporting and rewarding counsel for undertaking the risk of a contingency case applies here.  From the outset, Class Counsel understood that they were embarking on what was likely to be complex, expensive, and lengthy litigation.  This was not a case where any recovery was assured, but rather presented a number of legal issues and challenges in a data breach realm that has been the subject of very little jurisprudence, consistency, or certainty nationwide, and many of the challenges unique to data breach cases were raised by Defendant over the course of this Litigation in the dismissal motions.  (*See* Dkt. Nos. 25, 36)  Despite the challenges inherent in the Litigation and the attendant risks, no client or Class member was asked to pay fees or advance costs, which, at this point, exceed $46,061.26.  Unlike Defendant's counsel, who have been compensated hourly and on a periodic basis, Class Counsel have received no compensation at all during the course of approximately nine months of providing legal representation to Plaintiffs and the Class.  Further, absent this Settlement, there was no guarantee Class Members would obtain any relief from Defendant, which would have resulted in Class Counsel receiving nothing for their work on behalf of Plaintiffs and the Class.

The Fistel Declaration submitted herewith details the expenses incurred in the prosecution of this Litigation.  Class Counsel bore these risks and were prepared to litigate this case to trial and on further appeal, if necessary.  Despite these risks and the fact that few cases had been successfully litigated for the type of claims raised in this Litigation, Class Counsel accepted this case to address Defendant's misconduct and obtain meaningful relief for Plaintiffs and the Class.  The fee requested in these cases must take into consideration the substantial risks Class Counsel shouldered.  Based on this level of risk undertaken, a Fee and Expense Award to Class Counsel of $475,000 is warranted.

### C.    The Results Achieved by Class Counsel Provide Substantial Benefits to Class Members

The results achieved by Class Counsel in securing a settlement is a "major factor" to consider in awarding attorneys' fees. *Wilson*, 2016 U.S. Dist. LEXIS 15751, at *45 (*citing Hensley v. Eckerhart*, 461 U.S. 424 (1983)). In considering the results of the settlement achieved, "courts examine the value of *both* monetary and injunctive relief." *Id.* Furthermore, when awarding fees, courts must consider the "***total benefits made available***" under the settlement, "regardless of the actual payout to the class following a claims process." *Id.* at *44 (citing *Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291, 1295–96 (11th Cir. 1999) (affirming fee award of 33-1/3% of total amount made available to class, and determining that attorney's fees may be determined based on total fund, not just actual payout to class)).

Due to their dogged and aggressive efforts in pursuing the Litigation, Class Counsel have achieved a robust Settlement that provides both monetary and injunctive relief to the Class. Indeed, Class Counsel have secured valuable and meaningful settlement benefits that directly addresses the significant harms alleged in the Complaint. This excellent result warrants approval of the requested fee award. (Fistel Dec. at ¶90)

Under the monetary component of the Settlement, Class Members may submit a claim of up to $1,000 for Out-of-Pocket Losses or Eligible Incidents of identity theft or fraud, fairly traceable to the Phishing Attack, with a combined total of $875,000 established as a Settlement Fund for such claims. (Dkt. No. 40 at ¶34) Additionally, all Class Members are entitled to receive 24 months of premium Identity Theft Monitoring and Protection services through TransUnion (*id.* at ¶35), providing additional benefits to Class Members worth approximately $972,921.[4]

---

[4] This figure is based on the retail value of TransUnion's MyTrueIdentity services—provided to all Class Members under the Settlement as Credit and Identity Monitoring and Protection services (Dkt. No. 40 at ¶35)—which is worth $19.95 per person, per month (*see supra* fn. 2), and then

Furthermore, the Settlement provides for improvements in Lincare's data security practices through Enhanced Data Security Measures (*id.* at ¶36), which will ensure further protection of Class Members' PII going forward.  (Fistel Dec. at ¶74)  The Enhanced Data Security Measures create substantial value to the Class (*id.* at ¶35), which while difficult to quantify, should be considered in evaluating the reasonableness of the Fee and Expense Award.  *See Camden*, 946 F.2d at 775 (authorizing consideration of non-monetary benefits); *Faught v. Am. Home Shield Corp.*, 668 F.3d 1233, 1243–44 (11th Cir. 2011).

Importantly, when considered on an average, "per class member" basis, the value of the class-wide relief afforded under this Settlement far exceeds the value of settlements reached in other, similar data breach class actions.  (*Id.* at ¶77)  Indeed, the average recovery per Class Member recovery under the Settlement is approximately \$909.41, at a minimum.[5]  As set forth in the table set forth on page 21 of the Final Approval Motion, the average per class member recovery under the Settlement is many times greater than in other data breach class action settlements that have been finally approved as fair, adequate, and reasonable.

The quality of the Settlement is further demonstrated by the overwhelmingly positive reception it has received from Plaintiffs and the Settlement Class Members.  Each of the Plaintiffs have submitted declarations confirming that the Settlement "achieves an excellent recovery for the

---

calculated by multiplying the \$19.95 retail cost by the 24 months of such services provided to 2,032 Class Members.

[5] This figure includes the \$875,000 cash Settlement Fund relief (Dkt. No. 40 at ¶¶23, 34, 37), and \$972,921.60 for the Credit and Identity Monitoring and Protection services (*i.e.*, \$19.95 monthly retail value, per each of the 2,032 Class Members, over 24 months)—a total Class recovery of \$1,847,921.60, or \$909.41 per Class Member.  (Fistel Dec. at ¶77)  However, this calculus notably excludes the numerous other decidedly valuable Settlement benefits provided separately and additionally to the Class, such as the injunctive relief of Enhanced Data Security Measures, Fee and Expense Award to Class Counsel, Service Awards to the Settlement Class Representatives, and costs of Notice and Claims Administration.  (*Id.* at ¶78)

Class, . . . represents a fair, reasonable, and adequate recovery on behalf of the Class, and . . . is in the best interest of all Class Members," and that they "strongly endorse the Settlement."  (Fistel Dec., Exs. 4, 5, 6 at ¶¶6, 9[6])  Moreover, there have been no objections lodged with the Court at this juncture, which strongly indicates the Settlement, the relief provided thereunder, and the requested Fee and Expense award, are acceptable to Class Members.  *See Lipuma v. American Express Co.*, 406 F. Supp. 2d 1298, 1324 (S.D. Fla. 2005) (low percentage of objections "points to the reasonableness of a proposed settlement and supports its approval").

Based on foregoing, the Settlement negotiated by Class Counsel obtains direct and meaningful relief for the Settlement Class Members who were impacted by the Phishing Attack. The results of the Settlement are all the more impressive considering the significant legal challenges that Class Counsel faced in litigating this case.  Given these risks, Class Counsel's efforts to the secure the Settlement, at this particular stage of the Litigation, is commendable and warrants appropriate compensation.  *See In re Checking Account*, 830 F. Supp. 2d at 1365 ("The Court agrees with Plaintiffs that this is one of the occasions when 'an early resolution may demonstrate that the parties and their counsel are well prepared and well aware of the strength and weaknesses of their positions and of the interests to be served by an amicable end to the case.'"). The quality of the Settlement itself confirms the reasonableness of the Fee and Expense Award. *See Behrens*, 118 F.R.D. at 547 ("Perhaps no better indicator of the quality of representation here exists than the result obtained.").

### D.     The Litigation Required Significant Legal Acumen and Skill

In assessing the reasonableness of attorneys' fees, "a court should consider 'the skill and acumen required to successfully investigate, file, litigate, and settle a complicated class action

---

[6] Declarations of each Settlement Class Representative are attached as exhibits to the Fistel Dec.

lawsuit such as this one.'" *Thorpe v. Walter Inv. Mgmt. Corp.*, No. 14-cv-20880, 2016 U.S. Dist. LEXIS 144133, at *28 (S.D. Fla. Oct. 14, 2016) (quoting *David v. Am. Suzuki Motor Corp.*, No. 08-cv-22278, 2010 U.S. Dist. LEXIS 146073, at *26 n.15 (S.D. Fla. Apr. 15, 2010) (considering counsels' acumen in finding reasonable and approving $1 million attorneys' fee request)); *see also Whitehead v. Advance Stores Co.*, No. 16-cv-250-Oc-37PRL, 2017 U.S. Dist. LEXIS 79291, at *5 n.4 (M.D. Fla. May 23, 2017) (considering "the significant legal acumen required" in approving fee request as reasonable); *In re Checking Account*, 830 F. Supp. 2d at 1364 (emphasizing the "significant amount of the credit . . . given to Class Counsel's strategy choices, effort ***and legal acumen***" in securing "excellent" settlement despite enormous risks of case, and approving request for attorneys' fees in the amount of 30% of $410 million settlement fund).  Notably, in one of the few data breach orders issued within the Eleventh Circuit, the Southern District of Florida highlighted the high degree of acumen required in such cases as supporting approval of counsels' fee request.  *Burrows*, 2013 U.S. Dist. LEXIS 189397, at *23 ("[T]he Court notes that this case was novel, that it ***required significant legal effort and acumen from skilled and experienced counsel***, and that counsels' performance in this case has been excellent in the face of stiff and ardent opposition.").

The quality of Class Counsel's work in this novel data breach class action was excellent and is ultimately reflected in the result, which was obtained in the face of stiff opposition.  (Jaffe Dec. at ¶¶10, 11, 17; Fistel Dec. at ¶97)  This Litigation required specialized experience and expertise in complex class action litigation, consumer protection, remedies, and information technology, which few firms may have been willing or able to master to prosecute the Litigation successfully.  (*Id.* at ¶98)  Uncertainty of result and the likelihood of appeal have at all times been and remain substantial risks, and thus Class Counsel undertook significant risk in accepting

– 16 –

Plaintiffs' case.  (*Id.*)  Nonetheless, Class Counsel were able to secure exceptional relief through the Settlement, demonstrating the extent and value of their significant acumen, and supporting the reasonableness of the Fee and Expense Award.

### E.   The Requested Fee is Customary For This Type of Case

Class Counsel's hourly rates are reasonable and customary for this type of case.  (*See* Section D, *infra*)  In determining the reasonableness of hourly rates, courts consider the experience, reputation, and ability of the attorneys, and the skill required by the attorneys.  *See Shipes v. Trinity Indus.*, 987 F.2d 311, 320 (5th Cir. 1993).  Here, Class Counsel are experienced and skilled legal practitioners, including in the field of complex class action and consumer litigation.  (Fistel Dec. at ¶100; *see also* Jaffe Dec. at ¶¶10, 11, 17)  And, the high quality of Class Counsel's work is not unique to this Litigation.  As demonstrated by the firm résumé attached as an exhibit to the Fistel Declaration, Johnson Fistel specializes and has been successful in prosecuting myriad complex class action lawsuits on a nationwide basis over more than a dozen years.  (Declaration of Michael I. Fistel, Jr. of Johnson Fistel, LLP in Support of Settlement Class Representatives' Unopposed Motion for Final Approval of Class Action Settlement ("Johnson Fistel Dec.") at ¶¶9-10 & Ex.  C)

Class Counsel's rates reflect the competitive market hourly rates for national cases involving complex and class action litigation, as well as the reputation, experience, and success of the lawyers and firms involved.  Considering the complex nature of this Litigation and Class Counsel's experience, reputation, and skill, their hourly rates are reasonable.  Moreover, Class Counsel's requested Fee and Expense Award constitutes a negative lodestar multiplier.

Moreover, courts often look at fees awarded in similar class action cases to determine if the fee requested is reasonable.  *See Johnson*, 488 F.2d at 717–19.  As noted, Class Counsel are seeking a fee award that represents a benchmark percentage amount—25% of a portion of the total value of **only some** of the benefits conferred under the Settlement.  Class Counsel's request for a

benchmark award, on its face, is fair and reasonable, and well within the range of percentage fee awards authorized in this Circuit. *See In re Checking Account*, 830 F. Supp. 2d at 1335 (compiling fee awards and noting that "numerous recent decisions within this Circuit have awarded attorneys' fees up to (and at times in excess of) 30 percent"); *see also Wilson*, 2016 U.S. Dist. LEXIS 15751, at *45 (recognizing that percentage fee recoveries in the range of 20% to 50% are "customary in class actions that result in substantial results"). Class Counsel's fee request is all the more modest and reasonable when compared to the reported fee recoveries in other complex class action cases,[7] further demonstrating the Fee and Expense Award should be granted.

### F.    A Lodestar Analysis Supports the Reasonableness of the Fee Requested

The requested Fee and Expense Award is reasonable under the lodestar method, whether used as the primary means of analysis or a cross-check. Over the past two years, Class Counsel has collectively spent more than 1,500 hours on this case, for a total lodestar of $749,364.00 to-date. (Fistel Dec. at ¶106)

Courts typically apply a multiplier to reward counsel for their risk, the contingent nature of the fee, and the result obtained. Here, the requested Fee and Expense Award of $475,000 represents a ***negative*** lodestar multiplier of .6339, despite the fact courts routinely approve ***positive*** lodestar multipliers. *See, e.g.*, *Pinto v. Princess Cruise Lines Ltd.*, 513 F. Supp. 2d 1334, 1344 (S.D. Fla. 2007) (multipliers "'in large and complicated class actions' range from 2.26 to 4.5, while

---

[7] *See, e.g.*, *In re Target Corp. Customer Data Sec. Breach Litig.*, No. 14-md-2522 (D. Minn.) (Dkt. No. 645) ($6.75M in fees and expenses awarded to class counsel in data breach class action that yielded an average recovery of only $0.21 per class member); *In re The Home Depot, Inc., Customer Data Sec. Breach Litig.*, No. 14-md-2583 (N.D. Ga.) (Dkt. No. 261) ($7,536,497.80 in fees and expenses awarded to class counsel in data breach class action that yielded an average recovery of only $0.37 per class member); *In re Heartland Payment Systems, Inc. Customer Data Sec. Breach Litig.*, No. 09-md-2046 (S.D. Tex.) (Dkt. No. 160) ($641,192.50 in fees and expenses awarded to class counsel in data breach class action that yielded an average recovery of only $0.03 per class member). (Fistel Dec. at ¶104)

'three appears to be the average.'"); *Ingram v. Coca-Cola Co.*, 200 F.R.D. 685, 696 (N.D. Ga. 2001) (multipliers range from less than two to more than five); *Mashburn v. Nat'l Healthcare, Inc.*, 684 F. Supp. 679, 702 (M.D. Ala. 1988) ("A multiplier of approximately 3.1 . . . is not unusual or unreasonable."); *Columbus Drywall & Insulation v. Masco Corp.*, No. 04-cv-3066, 2012 U.S. Dist. LEXIS 196030, at *12 (N.D. Ga. Oct. 26, 2012) (approving a multiplier of 4).[8]

Accordingly, a $475,000 Fee and Expense Award is reasonable.[9]

## IV.   THE SETTLEMENT CLASS REPRESENTATIVES ARE ENTITLED TO SERVICE AWARDS

Class Counsel requests approval of a modest Service Award to the three Plaintiffs/Settlement Class Representatives in the amount of $1,000 to each.  From the outset, Plaintiffs agreed to pursue the Litigation on behalf of the Class (through trial and appeals, if necessary), and were Court-appointed as Settlement Class Representatives via the Preliminary Approval Order.  (*See* Dkt. No. 42; *see also* Fistel Dec., Exs. 5, 6, 7)  Pursuant to the Settlement, Defendant does not oppose these Service Awards and, if approved, will pay them separate from and in addition to all other Settlement benefits.  (Dkt. No. 40 at ¶65)

---

[8] Notably, Courts consider it a strong indicator of reasonableness where, as here, a fee request seeks a lodestar **discount** in a contingency case.  *See Warner v. Complete Cash Holdings, LLC*, No. 10-cv-21, 2011 U.S. Dist. LEXIS 162609, at *5-6 (N.D. Ga. Mar. 23, 2011) (highlighting the reasonableness of and approving fee request that represented a lodestar discount); *Katz v. China Century Dragon Media, Inc.*, No. 11-cv-2769, 2013 U.S. Dist. LEXIS 189987, at *23 (C.D. Cal. Oct. 10, 2013) ("Plaintiffs' Counsel does not request a 'premium' over their hourly rate; indeed, the 25.7% figure represents a discount of the lodestar.  Therefore, the amount requested is within a reasonable range for an award in this action."); *see also Parker v. Healthcare Inv. Grp., Inc.*, 272 F. Supp. 3d 1303, 1308 (N.D. Ala. 2017) (approving $360,000 fee and expense award that represented a 17% lodestar discount).

[9] Additionally, while Class Counsel's litigation expenses are not a discrete item recovered here under the Settlement, the same expenses they incurred in this Litigation—*e.g.*, expert witness fees, service, mediation, class notice, legal research, travel and lodging, and postage/delivery (Fistel Dec., Ex. 7 at Ex. B)—have been deemed "reasonable and necessary to the representation of the class and, therefore, recoverable."  *See Dear v. Q Club Hotel, LLC*, No. 15-cv-60474, 2018 U.S. Dist. LEXIS 42787, at *13 (S.D. Fla. Mar. 14, 2018).

"'Courts routinely approve incentive awards to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation.'" *Reeves v. Zealandia Holding Co.*, No. 13-cv-597-Orl-28TBS, 2016 U.S. Dist. LEXIS 147704, at *32-33 (M.D. Fla. Aug. 1, 2016) (collecting cases reciting same). Moreover, courts regularly find that modest service awards, specifically such as the $1,000 requests here, are "reasonable and will not result in disproportionately greater benefits to the class representative." *Id.* at *33 (approving $1,000 service awards); *see also Gonzalez v. Dynamic Recovery Sols., LLC*, No. 14-cv-24502, 2015 U.S. Dist. LEXIS 22612, at *13 (S.D. Fla. Feb. 20, 2015) (same); *Arango v. Landry's, Inc.*, No. 12-cv-9354, 2015 U.S. Dist. LEXIS 127869, at *6 (N.D. Ill. Aug. 27, 2015) (same).

Based on Class Counsel's experience, the amounts requested here are consistent with, if not more modest than, amounts typically awarded as reasonable. *See, e.g.*, *Burrows*, 2013 U.S. Dist. LEXIS 189397, at *20-21 (granting $3,500 service award to settlement class representative in data breach case); *Ponca Tribe of Indians of Okla. v. Cont'l Carbon Co.*, No. 05-cv-445, 2009 U.S. Dist. LEXIS 82522, at *10 (W.D. Okla. Jul. 31, 2009) (granting class representatives service awards between $1,000 and $15,000); *Camp v. Progressive Corp.*, No. 01-cv-2680, 2004 U.S. Dist. LEXIS 19172, at *23 (E.D. La. Sep. 23, 2004) (granting service awards up to $10,000 to named plaintiffs); *In re Lease Oil Antitrust Litig. (No. II)*, 186 F.R.D. 403, 449 (S.D. Tex. 1999) (granting plaintiffs service awards between $1,000 and $10,000).

Plaintiffs have each actively followed and participated in this Litigation from its inception, including assisting in crafting the Complaint, gathering, providing, and reviewing documents and information as part of discovery and motion-practice, attending in-person meetings and engaging in numerous telephone and email conversations with counsel, and engaging with counsel in as part of the mediation and Settlement negotiations. (Fistel Dec., Exs. 5, 6, 7 at ¶7; *see also* Fistel Dec.

– 20 –

at ¶¶118-20)  Plaintiffs have demonstrated a keen interest in the enforcement of the rights of the Class, and vindication and protection of their PII.  (*Id.*)  The Service Awards requested are justified in light of the Plaintiffs' willingness to devote their time and energy to prosecuting a representative action and reasonable in consideration of the overall benefit conferred on the Settlement Class, and should be approved.

## V.    CONCLUSION

Based on the foregoing, and for the reasons stated in the Final Approval Motion and Fistel Declaration, Settlement Class Representatives respectfully request that the Court approve the Service Awards in the amount of $1,000 to each of them, and the Fee and Expense Award of $475,000 to Class Counsel.

DATED:  July 20, 2018                    **JOHNSON FISTEL, LLP**

_____
                                   */s/ Michael I. Fistel, Jr.*
                    MICHAEL I. FISTEL, JR. (admitted *pro hac vice*)

Michael I. Fistel, Jr. (admitted *pro hac vice*)
David A. Weisz (admitted *pro hac vice*)
Murray House
40 Powder Springs Street
Marietta, GA  30064
Telephone: (770) 200-3108
Facsimile: (770) 200-3101
Email: MichaelF@johnsonfistel.com
        DavidW@johnsonfistel.com

**JOHNSON FISTEL, LLP**
Frank J. Johnson (admitted pro hac vice)
Phong L. Tran (admitted pro hac vice)
655 W Broadway, Suite 1400
San Diego, CA  92101
Telephone: (619) 230-0063
Facsimile: (619) 255-1856
Email: FrankJ@johnsonfistel.com
        PhongT@johnsonfistel.com

*Counsel for Plaintiffs, and Class Counsel on behalf of the Settlement Class*

– 21 –

**TRAGOS, SARTES & TRAGOS, PLLC**
Peter L. Tragos
Florida Bar. No.: 0106744
601 Cleveland Street, Suite 800
Clearwater, FL 33755
Telephone: (727) 441-9030
Facsimile: (727) 441-9254
Email: PeterTragos@greeklaw.com
        Linda@greeklaw.com

*Counsel for Plaintiffs, and Liaison Counsel on behalf of the Settlement Class*

## RULE 3.01(G) CERTIFICATION

The undersigned counsel certifies that he has conferred with Defendant's counsel in a good faith attempt to resolve the issues raised in this motion, and that Defendant's counsel does not oppose the relief requested herein.

DATED: July 20, 2018

**JOHNSON FISTEL, LLP**

*/s/ Michael I. Fistel, Jr.*
MICHAEL I. FISTEL, JR. (admitted *pro hac vice*)

40 Powder Springs Street
Marietta, GA  30064
Telephone: (770) 200-3104
Facsimile: (770) 200-3101
Email: MichaelF@johnsonfistel.com

## CERTIFICATE OF SERVICE

The undersigned counsel certifies that on this day, he electronically filed the above and foregoing with the Clerk of Court using the CM/ECF system, which will automatically send email notification of such filing to all attorneys of record.

**JOHNSON FISTEL, LLP**

*/s/ Michael I. Fistel, Jr.*
MICHAEL I. FISTEL, JR. (admitted *pro hac vice*)

Murray House
40 Powder Springs Street
Marietta, GA  30064
Telephone: (770) 200-3104
Facsimile: (770) 200-3101
Email: MichaelF@johnsonfistel.com